Harrison FAGAN, Petitioner–Appellee,

v.

Odie WASHINGTON, Warden, and Roland W. Burris, Attorney General of the State of Illinois, Respondents–Appellants.

Nos. 91–2118, 91–2215.

United States Court of Appeals,
Seventh Circuit.

Argued July 9, 1991.
Decided Sept. 5, 1991.

Barry Levenstam, Jerold S. Solovy, Ada S. Cooper (argued), Jenner & Block, Chicago, Ill., for petitioner-appellee.

Kathryn M. Frost, Steven J. Zick (argued), Office of the Atty. Gen., Criminal Appeals Div., William P. Pistorius, Asst. Atty. Gen., Office of the State's Atty., Civil Actions Bureau, Chicago, Ill., for respondents-appellants.

Before CUMMINGS, POSNER and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

The State of Illinois appeals from two separate orders by the district court granting habeas corpus relief to petitioner Fagan, who is serving a twenty-five year prison term for murder. One order directs the state either to grant him a new appeal because his appellate counsel was ineffective or to release him. The other order directs the state to release him unconditionally, on the ground that no reasonable factfinder could have found Fagan guilty of murder (under the state's theory of murder) beyond a reasonable doubt.

In the summer of 1983, Fagan, a member of a gang called the Black Gangster Disciples, was shot in the back, but not seriously injured, by a member of a rival Chicago street gang, the Vice Lords. Two nights later Fagan met with other members of his gang. They decided to seek revenge. A group of between six and thirteen gang members, including Fagan and someone called "Dede," went to a game room where the Vice Lords hang out. Twelve to fifteen persons were standing on the sidewalk in front of the game room. Most of the Disciples, including Fagan and Dede, walked past the group standing in front of the game room and then, when they were some distance away (perhaps as much as forty-five feet), Fagan and Dede turned and started shooting. Fagan was armed with a .22 caliber rifle and Dede with a shotgun. Both fired several shots, then fled. When the mêlée was over, three persons had been shot. Two were wounded and one—Billy Green—was dead. Green was found on the sidewalk in front of the game room. None of the three was a Black Gangster Disciple.

It was for the murder of Green, together with lesser crimes related to that murder, that Fagan was tried in a bench trial, convicted, and sentenced. But Green was killed not by a .22 caliber rifle or by a shotgun but by a single shot from a .38 caliber pistol that someone—obviously not Fagan—pressed against his back before firing. The pistol was never found, and no one knows who killed Green with it. Fagan was found guilty of murder on a theory of "accountability." Under Illinois law, "a person is legally accountable for the conduct of another when ... either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill.Rev.Stat. ch. 38, ¶ 5–2(c). In denying Fagan's motion for a new trial, the judge explained that "though there was no indication of any conversation that would lead to a conspiracy of sorts, there is clearly evidence of accountability, and under the laws of accountability as I understand it, as to the cause of death, it is legal, it makes no difference, and the Court took this into consideration as far as whose bullet was the actual bullet that killed this person or wounded the other persons when Mr. Fagan is accountable for the actions, even if we can not say whose bullets killed this person or shot the other people."

Fagan's direct appeal from his conviction inexplicably focused on peripheral aspects of the lesser crimes of which he had also been convicted (battery and armed violence). The appeal did not argue either that the trial judge had misunderstood the law of accountability or that there was insufficient evidence to support the conviction for murder. The Illinois Appellate Court upheld the conviction in an unpublished opinion and the Supreme Court of Illinois denied leave to appeal.

▇▇▇ The principal ground on which Fagan sought and obtained relief from the district court under the federal habeas corpus statute is that the evidence of his guilt of murder on a theory of accountability was constitutionally insufficient. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If this is right, the double jeopardy clause bars him from being retried and thus entitles him to his immediate release (he has completed the concurrent sentences imposed for his other offenses). *Young v. Kemp*, 760 F.2d 1097, 1105 n. 9 (11th Cir.1985). Since this ground was not presented in Fagan's direct appeal from his conviction, however, it was waived unless some basis for relief from waiver was present, *United States ex rel. Spurlark v. Wolff*, 699 F.2d 354 (7th Cir.1983) (en banc); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1135–36 (7th Cir.1990), such as ineffective assistance of appellate counsel. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Fagan's ability to get the federal district court and this court to consider the merits of his sufficiency-of-evidence claim thus depended on his demonstrating that his appellate counsel was ineffective. The state's lawyers have missed this connection. They do not argue that we must find ineffective assistance of appellate counsel before we can reach the merits of the sufficiency-of-evidence claim. They treat the two claims as unrelated. They have, as so often before, waived waiver. *Britz v. Thieret*, 940 F.2d 226, 229 n. 1 (7th Cir. 1991); *United States ex rel. Fleming v.*

*Huch*, 924 F.2d 679, 682 (7th Cir.1991); *Server v. Mizell*, 902 F.2d 611, 614 (7th Cir.1990); *Henderson v. Thieret*, 859 F.2d 492, 496–98 (7th Cir.1988); cf. *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir.1990); *Thomas v. Indiana*, 910 F.2d 1413, 1415 (7th Cir.1990). The state failed to catch another waiver as well. Fagan did not appeal from the denial of his state postconviction proceeding, in which he first raised the sufficiency-of-evidence ground. This failure was a procedural default that would bar the federal district court from considering the ground if the state had argued waiver. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.1991).

The law of habeas corpus is subtle and intricate; mistakes are easy to make. But it is a body of law of which the lawyers employed by a state attorney general should be masters. Failing to achieve such mastery, they should not blame federal judges for springing dangerous criminals free to prey on the citizenry whose safety the attorney general is sworn to protect.

Given the state's waiver, the ineffective-assistance claim becomes a fallback position for Fagan rather than a threshold that he must cross to reach his principal claim. It is a solid fallback, although given the waiver—and our view of the merits of the sufficiency-of-evidence claim—an unnecessary one. Fagan had a winning claim on direct appeal that the judge had either convicted him of murder on insufficient evidence or misunderstood the law of accountability. Either way Fagan would have been entitled to a reversal. His lawyer failed to raise either claim, instead raising weaker claims that, moreover, with one exception pertained only to Fagan's *shorter* concurrent sentences, so that a victory for his client would have been of academic interest only. No tactical reason—no reason other than oversight or incompetence—has been or can be assigned for the lawyer's failure to raise the only substantial claims that Fagan had. The state calls these claims "tenuous." They are not, as we are about to see. At the oral argument of the appeal the state's lawyer ad libbed the further argument that a claim of ineffective assistance of counsel cannot suc-

ceed unless the defendant has some federal claim that his counsel muffed. Forget the fact that Fagan did have such a claim; his claim of insufficient evidence is such, because the due process clause has been held to entitle a criminal defendant to demand that the prosecution have proved his guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The important point is that the constitutional right to counsel, and its derivative right that counsel be at least minimally effective, is unrelated to the source—whether state or federal—of the defendant's defenses. To argue otherwise would be to attempt to resurrect an argument that the Supreme Court implicitly rejected more than half a century ago, when it held that the Fourteenth Amendment entitled capital defendants who had, so far as appears, no federal defenses to the assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 71–72, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932).

■ We turn to the main claim. The state fastens on our recent decision in *Bates v. McCaughtry*, 934 F.2d 99 (7th Cir.1991), which distinguishes between cases in which the evidence of the defendant's guilt is insufficient under what the federal court might as an original matter suppose to be the correct rule of state law and cases in which it is insufficient under the rule actually applied at the defendant's trial. Only in the second case does the defendant have a federal claim. In the first his complaint is that the trial judge committed an error of state law, and errors of state law do not violate federal law and so do not give rise to a claim for federal habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). It may seem odd that a defendant should fare worse in federal court when not only was the evidence insufficient to convict him under state law properly understood but in addition the state judge may have misunderstood that law. In such a case, however, if he fails to obtain relief within the state court system, this may mean that the appellate court has decided to adopt the trial judge's "misunderstanding" as the authentic law of the state. In

that event it would no longer be possible to say that the judge *had* misunderstood that law; the outcome would show that he was the prophet of the law. But the essential point is that the federal habeas corpus statute is not an authorized vehicle for collateral attacks on rulings of state law. Due process requires that the elements of a crime be proved but does not prescribe the elements, just as it entitles the holder of a property right to notice and a hearing but does not determine what is property.

Suppose Billy Green had been the name not of a human being but of a pigeon. If the state trial judge had found as a fact that Fagan had aided in the murder of a human being and was therefore guilty of murder under the accountability statute, Fagan would have had a sufficiency-of-evidence claim that he could have pressed in a federal habeas corpus proceeding after exhausting his state remedies. But if the judge had instead said that under Illinois law a pigeon is a human being, Fagan's only remedy would have been to urge the Illinois appeals courts to reverse his conviction because of the judge's erroneous interpretation of state law. The state argues that ours is that kind of case, and alternatively that the evidence was constitutionally sufficient even if the accountability statute means what Fagan argues it means *and*—the critical point under *Bates*—the state trial judge agreed that that is what it means.

The state conceded in the district court that guilt of accountability requires proof that the defendant shared with the person who actually committed the crime for which the defendant is sought to be held accountable a common design. This was a prudent concession, given the case law. *People v. Terry*, 99 Ill.2d 508, 514, 77 Ill. Dec. 442, 445, 460 N.E.2d 746, 749 (1984); *People v. Taylor*, 199 Ill.App.3d 933, 940, 145 Ill.Dec. 938, 943, 557 N.E.2d 917, 922 (1990); *People v. Watts*, 170 Ill.App.3d 815, 825, 121 Ill.Dec. 427, 434–35, 525 N.E.2d 233, 240–41 (1988). But it dooms the state's alternative ground, that the evidence of Fagan's guilt was constitutionally sufficient even if the state trial judge

shared Fagan's view of the law, in which event there would be no *Bates* issue. No evidence was presented that Fagan shared a common design with whoever shot Green. Or that anyone in the group of Black Gangster Disciples who accompanied Fagan on his mission of revenge was armed, except for Fagan and Dede, neither of whom shot Green. Or that anyone in the group got close enough to a Vice Lord to poke a gun in his back. There wasn't even evidence that Green was a Vice Lord. He might have been a hapless bystander shot accidentally by a Vice Lord who was standing next to him and trying to defend himself. That might be enough to establish Fagan's guilt of felony murder, *People v. Hickman*, 59 Ill.2d 89, 319 N.E.2d 511 (1974); *People v. Tillman*, 70 Ill.App.3d 922, 925–26, 27 Ill.Dec. 204, 207, 388 N.E.2d 1253, 1256 (1979), but, for reasons that have never been explained, he wasn't charged with felony murder.

There was, then, insufficient evidence of murder under the "common design" standard of accountability to convict Fagan beyond a reasonable doubt. But maybe, as the state now argues with the benefit of *Bates*, the trial judge didn't think a common design was required. After all, he not only failed to intone the words "common design," but said it was irrelevant who fired the shots. Maybe someone having a personal grudge against Green used the darkness and confusion of the shoot-out as a convenient opportunity to rub him out with minimum risk of detection. If all that mattered to the judge was that Fagan started shooting and someone got killed, then, as there was sufficient evidence of Fagan's guilt of that "crime," Fagan has no federal claim.

The "crime" would be something like strict liability for the consequences of extremely and intentionally dangerous conduct, and thus a form of or kin to felony murder. Suppose that all Fagan did by his scheming and shooting was to create an auspicious occasion for someone with a grudge against Green to do him in. On the view that the state is attributing to the judge, that would be enough to make Fagan guilty of murder on a theory of ac-

countability. But that is a very odd form of accountability to impute to the judge. Forget the case law. The statute requires the defendant to have the intent to promote or facilitate the commission of the crime. If Green wasn't even a member of the Vice Lords—and for all we know, he was not—it is difficult to see how Fagan could have formed the intent that he be murdered. The only people Fagan wanted to see murdered were Vice Lords. Of course he was quite willing to risk the death of a bystander, since he fired in the dark into a crowd, but that willingness describes a state of mind better characterized as recklessly indifferent to the safety of bystanders than as intending that they be done in. And however this may be—for recklessness and intent do tend to merge, *United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir. 1990); *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir.1985)—the statute goes on to require, as an additional element, that the defendant solicit, aid, abet, agree, or attempt to aid the person who commits the actual crime. The only word in this list that comes close to describing what happened in this case—should it be the fact that Green was shot by another Vice Lord, as is entirely possible—is "aid." But given its position in the list, it plainly means "aid" in the sense of "aid and abet," rather than "aid" in the lay sense in which it might include entirely innocent or even inadvertent assistance. And we know that "aid and abet," in Illinois as elsewhere, implies deliberate assistance, *People v. Ware*, 82 Ill.App.3d 297, 306, 37 Ill.Dec. 760, 767, 402 N.E.2d 762, 769 (1980); *People v. Gilbert*, 194 Ill.App.3d 184, 188, 141 Ill.Dec. 137, 140, 550 N.E.2d 1183, 1186 (1990), here plainly lacking if what happened is that a Vice Lord shot a bystander by accident. The accountability statute *is* Illinois' aiding and abetting statute, as the legislative history makes clear. Smith–Hurd Ill.Rev.Stat.Ann. ch. 38, ¶ 5–2, Committee Comments–1961.

When in doubt, we think it both impetuous and impolitic to impute to a state trial judge a misunderstanding of state law. Cf. *Black v. Romano*, 471 U.S. 606, 615,

105 S.Ct. 2254, 2259, 85 L.Ed.2d 636 (1985). We do not mean to erect an irrebuttable or even a strong presumption that a state judge has a correct understanding of every doctrine of state law that he applies, because judges make many mistakes, here placed beyond effective correction within the state court system by the ineffective assistance that Fagan received from the lawyer who handled his direct appeal. But we should not leap to the conclusion that because the judge did not mention "common design," and because his statement that it didn't matter who shot Green would if meant literally have committed him to a fantastic expansion of the accountability offense, what we have here is not a misassessment of the evidence but a profound misunderstanding of state law, which only the state courts can correct. (If that *were* what we had here, then Fagan would be entitled to another appeal, because of the ineffective assistance of his appellate counsel.) It seems more likely that when the judge said it didn't matter who shot Green, he meant that it didn't matter whether Fagan or some other member of the group of Black Gangster Disciples fired the fatal bullet. As of course it did not. The group had vowed revenge. Their scheme encompassed the murder of anyone whom they believed to be a Vice Lord (whether or not he really was). Their common design embraced the killing of Billy Green on the sidewalk in front of the game room by any member of the group. But not by a nonmember. The judge did not mention or, as we read his words, even allude to that possibility. Instead he assumed, incorrectly in our view, that the bullet that killed Green must have come from a gun fired by one of the Black Gangster Disciples. He may have forgotten that he had excluded from evidence a bit of hearsay that another Black Gangster Disciple besides Fagan and Dede had been armed.

We conclude that this is not a *Bates* case, and that the district judge was correct to find that no reasonable factfinder could have found Fagan guilty beyond a reasonable doubt of the crime of murder on a theory of accountability. Quite possibly Fagan could have been successfully prose-

cuted for murder under a different theory, that of felony murder. But the state must live with the consequences of having proceeded on a theory that it could not establish with the certitude required in criminal cases. Fagan is entitled to his freedom. Both orders of the district court are

AFFIRMED.