74 F.3d 1242
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Feilberto FLORES, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 94-3457.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 28, 1995.*
Decided Jan. 11, 1996.
 
 Before POSNER, Chief Judge, and FAIRCHILD, and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Feilberto Flores appeals the denial of his second motion for relief pursuant to 28 U.S.C. Sec. 2255. In this motion, Flores attacked the fairness of his trial, the effectiveness of both his trial and appellate counsels, and the length of his sentence.
 
 I. Background
 
 2
 The history of this case prior to Flores's second motion is described in detail in our opinion in United States v. Flores, 5 F.3d 1070 (7th Cir.1993), cert. denied, 114 S.Ct. 884 (1994), and we presume familiarity with that opinion. Briefly, Flores was arrested on October 4, 1990, and charged with several crimes relating to drug trafficking activities. The chief witness in Flores's trial was Carlos Cabral, who testified that he dealt drugs with Flores hundreds of times from 1988 until Flores's arrest. According to trial testimony, Cabral was arrested by FBI agents on October 1, 1990, while Cabral was trying to sell drugs. After being arrested, Cabral cooperated with the FBI. He told the FBI of his past drug dealings with Flores, and tape-recorded several conversations with Flores regarding the distribution and sale of cocaine. Cabral set up a meeting with Flores on October 4, 1990, at which FBI agents arrested Flores. Based on Cabral's testimony and other evidence, Flores was convicted and sentenced to 364 months in prison.
 
 
 3
 In his direct appeal, Flores challenged the enhancement of his sentence due to prior convictions, and claimed ineffective assistance of counsel on the ground that his trial counsel, Michael Green, had represented one of Flores's co-conspirators, Amador Rodriguez, in a prior criminal action. In Flores's first Sec. 2255 motion, denied by the district court during the pendency of Flores's direct appeal, Flores repeated his ineffective assistance claim. We consolidated Flores's direct appeal and the appeal from the denial of his Sec. 2255 motion, and affirmed Flores's conviction and sentence, and the denial of his Sec. 2255 motion. In doing so, we held that the trial court, after inquiry, had properly accepted Flores's waiver of conflict-free counsel with respect to Green's prior representation of Rodriguez.
 
 
 4
 The second Sec. 2255 motion followed. Flores argued that Cabral was an FBI operative for at least a year before October 1990. Accordingly, Flores claimed that his rights to due process and a fair trial were violated because: he was entrapped by the FBI into the drug trafficking activities for which he was convicted; Cabral was allowed to perjure himself during Flores's trial by not revealing his ties to the FBI that existed prior to October 1, 1990; and the government withheld and concealed evidence of Cabral's ties to the FBI. Flores also claimed ineffective assistance of his trial counsel, Michael Green. Green allegedly had "divided loyalties," since, according to Flores, Green had represented Cabral and Cabral's brother-in-law in 1988 and 1989 after their arrest and indictment on drug charges, and that in 1989 Cabral had paid Green $20,000 for the representation. Flores claimed that as a result, Green was protective of Cabral during the trial, and thus neither the jury nor the judge heard about Cabral's cooperation with the FBI prior to October 1990 (which Flores contends that Green knew from his representation of Cabral), or about Cabral's motives to lie in his testimony in order to get favorable treatment from the FBI.[1]
 
 II. Analysis
 
 5
 "[R]elief under 28 U.S.C. Sec. 2255 is limited to 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.' " Bischel v. United States, 32 F.3d 259, 263 (7th Cir.1994) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir.1991) (internal quotations omitted)). On appeal from the denial of a Sec. 2255 motion, "we review the evidence and draw all reasonable inferences from it in the light most favorable to the government. "Messinger v. United States, 872 F.2d 217, 219 (7th Cir.1989). We review questions of law de novo, and the district court's factual findings for clear error. Stoia v. United States, 22 F.3d 766, 768 (7th Cir.1994). To hold the district court's findings of fact "clearly erroneous," we must be "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 6
 Flores's claims that he was entrapped in a "sting" operation and that the government withheld evidence about Cabral are based entirely on the argument that Cabral was an FBI operative prior to October 1, 1990. The claims that Flores's trial counsel was ineffective, that the prosecution allowed its witness, Cabral, to commit perjury, and that the length of Flores's sentence was based on unreliable evidence, are also largely based on the same argument. Flores offers three grounds for his assertion that Cabral was an FBI operative prior to October 1, 1990: an affidavit by FBI agent Robert Garcia, an unnamed "reliable source," and inferences from Cabral's trial testimony. As the district court succinctly explained, Garcia's affidavit provides no proof that Cabral was an agent prior to October 1990: "Garcia's affidavit discusses information supplied by Cabral but does not mention when Cabral provided the information. Garcia simply discusses facts regarding Flores's drug trafficking operations, some of which involved events before October 1990." Mem.Op. at 5 (emphasis in original). The district court also was correct to disregard the "reliable source," since "Flores does not name his source or attempt to establish his source's reliability." Id. Finally, Flores infers from Cabral's trial testimony that since Cabral received favorable treatment from the FBI, he must have been working for the FBI. However, any favorable treatment that Cabral received from October 1, 1990 onwards may be attributed to Cabral's cooperation with the FBI starting on October 1, 1990. As to Cabral's treatment before October 1, 1990, Flores suggests that Cabral avoided jail by working for the FBI. But Flores does not point on appeal to any specific evidence to support this allegation.[2] We find no clear error in the district court's fact finding.
 
 
 7
 Flores also argues that Green provided ineffective assistance since he had "loyalties" to the main witness against him, having represented him in 1988-89.[3] Furthermore, Flores contends that Green failed at trial and sentencing to explore Cabral's motives to lie or slant his testimony.[4] Flores points to no evidence, either in his motion or on appeal, that Green ever represented Cabral. All he cites is the government's pre-trial motion for judicial inquiry into a possible conflict of interest. R.83. According to that motion, Cabral informed the government that "he had previously assisted Jose Gomez in the payment of legal fees to counsel Michael Green." Cabral was "instructed to send Michael Green large sums of money which in part constituted legal fees for his representation of Gomez," by means of wire transfers in various amounts and under fictitious names. Cabral "did as he was instructed, and in fact had contact with Green's office to advise them as to the particulars of the incomming [sic] money orders including what names they would be arriving under." The motion then stated that the government disclosed this information to Green, who replied that "although he did represent Mr. Gomez, and that his fees were paid by wire transfer, he did not believe that any potential existed for a conflict of interest." The government was not aware of "any other details concerning any past relationship between Mr. Green and Mr. Cabral." Certainly, this motion for judicial inquiry is evidence that Green was paid by Cabral, and may suggest that Green had reason to know that Cabral was paying him. But this is not evidence that Green ever represented Cabral.
 
 
 8
 The prejudice component of an ineffective assistance claim is presumed "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " Strickland v. Washington, 466 U.S. 668, 692 (1984) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 348 (1980)). However, Flores has presented no evidence that Green had any relationship with Cabral by the time Green began to represent Flores. In other words, there is no evidence that Green, during his representation of Flores, either was under an "actual conflict of interest" or was "actively representing" both Flores's interests and Cabral's interests.
 
 
 9
 Accordingly, Flores must show prejudice. Id. at 691-93. As we held in the appeal of Flores's first Sec. 2255 motion, Flores must show that "Green's errors were so serious as to deprive Flores of a fair trial, that is, of a trial whose result is reliable." Flores, 5 F.3d at 1079-80 (citing Strickland, 466 U.S. at 687, and United States ex rel. Duncan v. O'Leary, 806 F.2d 1307, 1312 (7th Cir.1986), cert. denied, 481 U.S. 1041 (1987)). We concluded that Flores did not suffer prejudice, since "[t]he abundant evidence against Flores establishes that the result of the trial--Flores' conviction--was reliable." Id. at 1080. Flores's contentions in the present appeal do not persuade us to alter this conclusion. "The abundant evidence" against Flores included not only Cabral's testimony, but also telephone records, tape recordings, and both drugs and a large amount of equipment suitable for dealing drugs found in his co-conspirator's apartment, where Flores was arrested. See id. at 1074-76. Both the jury and the judge could infer on their own, from the obvious facts that Cabral had worked for the FBI after October 1, 1990 and was a drug dealer testifying for the prosecution, that Cabral might have shaped his testimony in order to gain rewards or avoid adverse actions from the FBI. Since the motives of Cabral to lie were apparent, the failure of Green to highlight the issue of Cabral's motives does not establish "a reasonable probability" that Cabral's statements would otherwise have been discounted and that the results of the trial or sentencing would have been different. Strickland, 466 U.S. at 694.
 
 
 10
 Flores also raises a due process challenge to his sentence, arguing that Cabral's testimony was unreliable, given Cabral's motives to lie. "A criminal defendant 'has a due process right to be sentenced on the basis of reliable information.' " United States v. Vold, 66 F.3d 915, 918 (7th Cir.1995) (quoting United States v. Beler, 20 F.3d 1428, 1432 (7th Cir.1994)). However, arguments based on the motives of witnesses to provide unreliable information are " 'wasted on an appellate court' because questions of credibility are solely for the trier of fact." United States v. Garcia, 66 F.3d 851, 857 (7th Cir.1995) (quoting United States v. Molinaro, 877 F.2d 1341, 1347 (7th Cir.1989)). "In fact, a district court is entitled to credit even testimony that 'is totally uncorroborated and comes from an admitted liar, convicted felon, large-scale drug dealing, paid government informant.' " Id. (quoting Molinaro, 877 F.2d at 1347). Accordingly, we will not upset the trial court's decision to credit Cabral's testimony in sentencing Flores, even though Cabral was a drug-dealer and a government informant.
 
 
 11
 Flores's final claim is that his appellate counsel was ineffective on his direct appeal and his first Sec. 2255 motion. Flores had no right to effective assistance of counsel on his Sec. 2255 motion. See Coleman v. Thompson, 501 U.S. 722, 756-57 (1991). He did have a Sixth Amendment right to effective assistance of counsel on his direct appeal. Evitts v. Lucey, 469 U.S. 387 (1985); Hollenback v. United States, 987 F.2d 1272, 1275 (7th Cir.1993). However, Flores has presented in his second Sec. 2255 motion the claims that he believes that his appellate counsel should have made. He has failed to support his claim that Cabral worked for the FBI prior to October 1990, or any other claim. His claims do not entitle Flores to relief now, and would not have entitled him to relief on direct appeal. Thus, Flores cannot show any serious detriment from the alleged deficiencies in his appellate counsel's performance, and is not entitled to relief on this ineffective assistance claim. Strickland, 466 U.S. at 687.[5]
 
 
 12
 The district court's judgment is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Petitioner-appellant has filed such a statement. Upon consideration of that statement the court has concluded that oral argument would not be helpful, and the appeal is submitted on the briefs and the record
 
 
 [1]
 The government did not contend below (and does not contend here) that Flores's second Sec. 2255 motion should be dismissed as abusive for failure to assert these grounds in the first motion. Accordingly, the government has waived this argument. See McCleskey v. Zant, 499 U.S. 467, 494 (1991) (government has the burden to plead abuse of procedure). Likewise, the government has waived any argument that Flores's motion should be dismissed for failure to assert grounds on direct appeal. Doe v. United States, 51 F.3d 693, 698 (7th Cir), cert. denied, 116 S.Ct. 205 (1995); Fagan v. Washington, 942 F.2d 1155, 1157 (7th Cir.1991)
 
 
 [2]
 In an affidavit attached to his Sec. 2255 motion, Flores suggested that he knew "names of drug dealers who had been arrested as a result of Cabral's undercover work." Flores did not say how he knew these names. In any event, Flores does not include an argument on this ground in either his original brief or reply brief on appeal. He has waived this potential argument. Bank of Illinois v. Over, 65 F.3d 76, 78 (7th Cir.1995). In addition, Flores states in his reply brief that "Cabral admitted during his testimony and at several other times that he became a DEA/FBI informant after his arrest in 1979." This argument was not raised in Flores's Sec. 2255 motion or in his opening brief, and is also waived. Brooks v. United States, 64 F.3d 251, 257 (7th Cir.1995)
 
 
 [3]
 In Flores's first Sec. 2255 appeal, we decided that "[b]y waiving his right to conflict-free counsel, Flores waived only his right to effective assistance of counsel as it relates to any conflict of interest issues. [United States v.] Lowry, 971 F.2d [55,] 63 [ (7th Cir.1992) ]. Flores did not waive any other ineffective assistance of counsel claims." Flores, 5 F.3d at 1079 n. 8. The government interprets this passage to prohibit Flores from making any ineffective assistance claim based on conflicts of interest. However, we interpret this passage merely to prohibit Flores from raising an ineffective assistance claim relating to the pre-trial conflicts hearing at issue in the first appeal. See id. at 1076-77 (setting out relevant excerpt from conflicts hearing). Lowry, the case we cited, does not suggest that if a defendant waives the right to challenge one conflict, he is precluded from raising ineffective assistance claims based on other conflicts (for instance, conflicts not apparent to the defendant at the time of waiver). See Lowry, 971 F.2d at 63
 
 
 [4]
 Flores also asserts that the FBI has paid Cabral or allowed him to keep proceeds from past drug crimes, and has given Cabral freedom to continue drug dealing. Flores does not point to any evidence for these claims, and accordingly we will not consider them. United States v. Benson, 67 F.3d 641, 644 n. 1 (7th Cir.1995); United States v. Mason, 974 F.2d 897, 900 (7th Cir.1992)
 
 
 [5]
 Flores argues that the court should not have dismissed his second Sec. 2255 motion only three days after the government filed its response. Flores also argues that the government, in its response, was required to file counter-affidavits or produce evidence. Flores does not cite any authority for these propositions, and we can find none. The Sec. 2255 rules state merely that the government's answer "shall respond to the allegations of the motion," Rule 5(a), id.; the rules nowhere mandate that the government support its response to the allegations with counter-affidavits or any other specific documents. Even if the district court had concluded that counter-affidavits were appropriate to deciding the case, the district court was merely permitted to mandate such a procedure, and was not required to do so. See Rule 12, id. ("If no procedure is specifically prescribed by these rules, the district court ... may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure ... to motions filed under these rules.") (emphasis added)