Theophalis WILSON, Petitioner,

v.

Donald T. VAUGHN, et al., Respondents.

No. CIV.A. 02–1605.

United States District Court, E.D. Pennsylvania.

Feb. 10, 2004.

Barnaby C. Wittels, Lacheen, Dixon, Wittels & Greenberg LLP, Philadelphia, PA, for Petitioner.

John W. Goldsborough, Thomas W. Dolgenos, District Attorney's Office, Philadelphia, PA, for Respondents.

### MEMORANDUM AND ORDER

SCHILLER, District Judge.

This case requires the Court to determine whether a criminal appellate attorney's failure to raise a crucial change in the law governing his client's appeal falls within the United State Supreme Court's standard for ineffective assistance of counsel. Presently before the Court is the Report and Recommendation ("Report") of Magistrate Judge Peter B. Scuderi recommending that the Court deny Theophalis Wilson's petition for a writ of habeas cor-pus and issue a certificate of appealability. Petitioner and Respondents have each filed objections to the Report requesting de novo determinations by the Court pursuant to 28 U.S.C. § 636(b). For the reasons set out below, the Court declines to adopt the Report; instead, the Court grants the petition, vacates Petitioner's convictions, and orders a new trial.

## I. BACKGROUND

Petitioner was indicted and tried in the Pennsylvania Court of Common Pleas on charges of first-degree murder, robbery, criminal conspiracy, violating the Pennsylvania Corrupt Organizations Act ("PCOA"), and possessing an instrument of crime. At Petitioner's trial, the Commonwealth argued that Petitioner and a co-defendant, both members of a criminal gang, killed three people whom they had lured to a meeting on the premise of a phony gun sale. *Commonwealth v. Wilson*, 697 A.2d 280 (Pa.Super. 1996) (upholding conviction). In addition to evidence supporting the murder and conspiracy allegations, the Commonwealth introduced, over Petitioner's objections, a substantial amount of evidence regarding acts that Petitioner had allegedly performed approximately eight months after the murders in question, including illegal gun dealing.[1] *See id.* at 280. The trial court admitted this evidence as relevant to Petitioner's alleged violation of the PCOA, an anti-racketeering statute that requires the Commonwealth to prove a "pattern" of criminal activity "in the conduct of an enterprise." 18 PA. CONS. STAT. ANN. § 911(b)(3) (1998). On August 6, 1993, Petitioner was convicted of three counts each of first-degree murder, criminal conspiracy, and

---

1. This evidence consisted of the testimony of: (1) Daniel Machonis, an undercover ATF agent who testified and played wiretap recordings of Petitioner attempting to purchase guns from him; and (2) David Lee, who testified that he purchased illegal guns for Petitioner. *Wilson,*No. 02646 Philadelphia 1995, slip op. at 2–5.

robbery, as well as one count of violating the PCOA and one count of possessing an instrument of crime. *Wilson*, Philadelphia 1995, slip op. at 2. Petitioner was sentenced to life in prison, and one of his co-defendants was sentenced to death, although the latter's conviction was eventually vacated on a state habeas corpus petition. *See Commonwealth v. Williams*, Nos. 1770–96, 1825–46, slip op. (Pa.Ct.Com.Pl. May 29, 2003) (entering acquittal on PCOA charge and ordering new trial on remaining counts).

Petitioner, represented by Jack McMahon, Esquire, appealed his conviction to the Superior Court of Pennsylvania. While this appeal was pending, the Supreme Court of Pennsylvania issued an opinion holding that in order to obtain a conviction under the PCOA, the Commonwealth was required to prove that a defendant was a member of a "legitimate" enterprise, as opposed to a gang or other wholly illegitimate organization. *Commonwealth v. Besch*, 544 Pa. 1, 674 A.2d 655 (1996). Despite this ruling, Mr. McMahon failed to raise *Besch* before the Superior Court.[2] On December 31, 1996, the Superior Court affirmed Petitioner's convictions in an opinion that makes no mention of the new precedent. *See Wilson*. Thereafter, the Pennsylvania Supreme Court declined to hear Petitioner's appeal. *Commonwealth v. Wilson*, 548 Pa. 658, 698 A.2d 67 (1997).

Petitioner then filed a state habeas corpus petition pursuant to the Pennsylvania Post–Conviction Relief Act ("PCRA"). Petitioner alleged a variety of errors in his trial and direct appeal, including claims that the holding in *Besch* warranted reversal of his PCOA conviction and that appellate counsel McMahon was constitutionally

ineffective in failing to raise *Besch* before the Superior Court. The PCRA petition was denied by the Court of Common Pleas, in part because the court found the substantive *Besch* claim defaulted due to Petitioner's failure to raise it on direct appeal, and in part because the court held that vacating the PCOA conviction would have no impact on Petitioner's life sentence for murder. *See Commonwealth v. Wilson*, No. 1779, slip op. (Pa.Ct.Com.Pl. Oct. 17, 2000).

Petitioner appealed this denial *pro se* to the Pennsylvania Superior Court, which affirmed. *Commonwealth v. Wilson*, 799 A.2d 177 (Pa.Super. 2002). Despite the fact that *Besch* was not decided until several months after Petitioner's post-trial motions, the Superior Court held, *inter alia*, that his substantive argument regarding *Besch* was waived because it had not been raised during post-trial motions. *Id.* at 6, 674 A.2d 655. The Superior Court also held that Petitioner's counsel was not ineffective in failing to raise this argument in post-trial motions because counsel could not have been expected to "predict a change in the law," *id.* at 7, 674 A.2d 655, but the court did not address whether appellate counsel was ineffective in failing to raise *Besch* before the Superior Court on direct appeal. Rather than appealing these rulings to the Pennsylvania Supreme Court, Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2254.

The federal petition, as amended, alleges fourteen bases for relief: five trial court errors; eight instances of ineffective assistance of counsel; and one charge of prosecutorial misconduct. On October 27, 2003, Magistrate Judge Scuderi issued the Re-

---

**2.** As discussed at length below, the Supreme Court of Pennsylvania has held that *Besch* applied to all cases with direct appeals pending at the time of its decision. *Common-* *wealth v. Shaffer*, 557 Pa. 453, 734 A.2d 840, 844 (1999) (reversing PCOA conviction of defendant whose appeal was pending when *Besch* was decided).

port recommending that the Court deny the petition in its entirety and issue a certificate of appealability. *Wilson v. Vaughn,* Civ. No. 02–1605, 2003 WL 22462251 (E.D.Pa. Oct. 27, 2003). Both Petitioner and Respondents filed timely objections to the Report. Although these objections address nearly the entire Report, the Court finds that only one of the fourteen underlying claims—ineffective assistance of counsel in failing to raise the *Besch* issue on direct appeal—need be addressed in order to reach a dispositive result. This claim is discussed below.

## II. STANDARD OF REVIEW

In reviewing a Magistrate Judge's report regarding a habeas corpus petition, the district court "shall make a de novo determination of those portions of the [Magistrate Judge's] report ... to which objection is made. A [district court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b); *see also Young v. Vaughn,* 83 F.3d 72, 76 n. 4 (3d Cir.1996) ("[T]he district court must review a Report and Recommendation de novo if the [habeas] petitioner files objections to it ....").

## III. DISCUSSION

In order to address the claim that Petitioner's counsel was ineffective in failing to raise the *Besch* issue on direct appeal, the Court must first determine whether Petitioner properly exhausted this claim in state court. If the claim is properly brought, the Court must then determine what standard applies to its consider-

ation. Finally, the Court must apply that standard to the merits of the claim.

## A. Exhaustion and Default [3]

The habeas corpus statute for state prisoners, 28 U.S.C. § 2254, provides that a claim for relief shall not be granted if the petitioner has failed to "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Pursuant to this Section, a federal court generally may not consider a petitioner's claim unless that claim was raised before all of the appropriate state courts. *See, e.g., Whitney v. Horn,* 280 F.3d 240, 252–53 (3d Cir.2002). An exception to this rule, however, exists where the petitioner can show "that failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), such as the conviction of one who is "actually innocent." *Sawyer v. Whitley,* 505 U.S. 333, 335, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).[4] Although the more common situation is one in which the petitioner provides new evidence that establishes his factual innocence, the Third Circuit has recognized that in situations such as the instant case, where the elements of the crime are changed after conviction, the petitioner may "rest on the record as it now stands and thus require the prosecution to present additional admissible evidence of his factual guilt." *United States v. Garth,* 188 F.3d 99, 110 n. 13 (3d Cir. 1999) (*citing Bousley v. United States,* 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)) (internal quotations omitted);

---

**3.** It is undisputed that Petitioner is time-barred from filing a second PCRA petition. Accordingly, to the extent the instant claim is unexhausted, Petitioner is excused from the exhaustion requirement. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir.2000) ("If ... state procedural rules bar a petitioner from seeking further relief in state courts, the exhaustion

requirement is satisfied ...." (internal quotations omitted)).

**4.** The other exception to the default rule— "cause and prejudice"—was neither raised by Petitioner nor applied by the Magistrate Judge.

*see also Cristin v. Brennan,* 281 F.3d 404, 421 (3d Cir.2002) ("In [*Garth* ], it was not a question of what new evidence of innocence the petitioner could present, but whether the evidence currently in the record was sufficient to convict.").

Petitioner's claim regarding the ineffectiveness of his appellate counsel in failing to raise *Besch* on direct appeal was argued on collateral review before the state courts in a PCRA petition. The PCRA court rejected this claim, and the Superior Court affirmed. Petitioner did not, however, appeal this affirmance to the Pennsylvania Supreme Court. Thus, the Court must determine whether this failure to seek state Supreme Court review renders the claim defaulted, and if so, whether the default is excused under the miscarriage of justice exception.

■■■ Normally, a petitioner's failure to pursue his state habeas petition through each of the state's courts would render his claims defaulted. *See Whitney,* 280 F.3d at 252–53. However, Petitioner has met his burden of showing that the error resulted in the conviction of one who was "actually innocent" of violating the PCOA, *Garth,* 188 F.3d at 110 n. 13 (discussing actual innocence claim where elements of crime were altered by judicial ruling after conviction), for it is undisputed that Petitioner was not a member of a legitimate organization, as required by *Besch. See* Resp. to Pet. for Writ of Habeas Corpus at 35; *Wilson,* 799 A.2d 177 ("[I]f *Besch* were applied to Wilson's case, the evidence would be insufficient to sustain Wilson's

conviction of corrupt organizations."); *see also Commonwealth v. Shaffer,* 557 Pa. 453, 734 A.2d 840, 844 (1999) (holding that "legitimate organization" requirement applies to PCOA convictions that were on direct appeal when *Besch* was decided).[5] Accordingly, the Court finds that even *if* the instant claim is defaulted, such default is excused under the miscarriage of justice exception to § 2254(b)(1)(A), and the merits of Petitioner's claim are properly before this Court.

In addition, the facts of this case present an alternative justification for excusing Petitioner's default under the miscarriage of justice exception. Approximately two years before Petitioner's PCRA appeal was rejected by the Superior Court, the Pennsylvania Supreme Court issued Judicial Administration Order 218. *In re: Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam) [hereinafter "Order 218"].[6] Order 218 provides that

in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be

**5.** Any contrary argument based upon the Pennsylvania legislature's subsequent amendment of the PCOA is misplaced, for the Pennsylvania Supreme Court has conclusively determined that this amendment was purely prospective. *See Shaffer,* 734 A.2d at 843–44.

**6.** Petitioner, Respondents, and the Magistrate Judge have engaged in a heated debate regarding whether a state court has the power

to define or alter the procedural requirements that Congress has established regarding federal habeas corpus petitioners. This Court, however, finds it unnecessary to decide whether Order 218 is valid, for as discussed below, it would be a patent miscarriage of justice to penalize Petitioner for his good-faith reliance upon a state Supreme Court order that had previously been enforced by the very court in which his petition was brought.

deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief.

*Id.* As of March 18, 2002, the date the Superior Court upheld the dismissal of Petitioner's PCRA petition, two of the three federal district courts sitting in Pennsylvania—including the Eastern District—had ruled that a habeas claim not need not be appealed to the state Supreme Court to be preserved because Order 218 "makes discretionary review [by the Pennsylvania Supreme Court] unavailable for the purpose of the exhaustion requirement in § 2254." *Mattis v. Vaughn,* 128 F.Supp.2d 249, 261 (E.D.Pa.2001); *see also Lambert v. Blackwell,* 175 F.Supp.2d 776, 785 (E.D.Pa.2001) ("For federal habeas purposes, Lambert did not have to petition for allocatur to exhaust her state remedies."); *Blasi v. Attorney Gen. of Commw. of Pa.,* 120 F.Supp.2d 451, 469 (M.D.Pa. 2000) ("[W]e conclude that the order of the Supreme Court of Pennsylvania removes a petition for allocatur from the one complete round of Pennsylvania's established appellate review process."). In addition, the Third Circuit had expressly declined to address the issue. *See Wenger v. Frank,* 266 F.3d 218, 225 (3d Cir.2001) ("Although it will undoubtedly be necessary for our court to address the broader question whether the filing of a petition for discretionary review with the Pennsylvania Supreme Court is now 'part of the ordinary appellate review procedure in the state,' we find it unnecessary to reach that issue

here."). Thus, every relevant legal source on record at the time would have led Petitioner to believe that the applicable law permitted him to file his federal claim without appealing his PCRA petition to the state Supreme Court.[7] Under these circumstances, it would constitute the most manifest miscarriage of justice to refuse to consider Petitioner's claims on the merits, for to do so would penalize him for his completely reasonable, rational, and informed reliance upon the law of both the state in which he litigated his collateral appeal and the federal district in which he brought his habeas corpus petition. *Cf. Kratz v. Kratz,* 477 F.Supp. 463, 481 (E.D.Pa.1979) (noting "intolerable injustice" of holding defendant who acted in reliance upon judicial opinion criminally liable) (*citing Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)).

**B. Standard for Consideration on the Merits**

██ Pursuant to § 2254(d), as amended by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petition for habeas corpus may be granted if the state courts' determination of the petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[8] This standard, however, "does not apply unless it is clear

---

7. Respondents rely upon *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), for the contrary proposition that Order 218 is invalid and Petitioner's claim is defaulted. The Court notes that both the *Mattis* and *Blasi* courts explicitly distinguished *O'Sullivan. See Mattis,* 128 F.Supp.2d at 257 (stating that this issue "was not before the Court in *O'Sullivan* "); *Blasi,* 120 F.Supp.2d at 466 (noting differences between Order 218 and the facts of *O'Sullivan* ).

8. The petition may also be granted if the state courts' decisions were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This subsection is not at issue with regard to the claim discussed in this Memorandum because the only relevant finding of fact—that Petitioner was a member of a wholly illegal enterprise— is undisputed. *See Wilson,* No. 2360 EDA 2000, slip op. at 6.

from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in light of federal law as established by the Supreme Court of the United States." *Everett v. Beard,* 290 F.3d 500, 508 (3d Cir.2002). If AEDPA does not apply, the federal court "owes no deference to a state court's resolution of mixed questions of constitutional law and fact." *Id.* (*citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring)).

In the instant case, the Magistrate Judge found that AEDPA deference was not warranted because the Pennsylvania standard for ineffective assistance of counsel as applied by the state courts deviates from the federal standard. Report, *supra,* at 28 (*citing Everett*). Respondents strenuously object that the Magistrate Judge has misinterpreted *Everett* and subsequent Supreme Court decisions. *See Early v. Packer,* 537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Woodford v. Visciotti,* 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002); *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). This Court, however, need not resolve this dispute, for even under AEDPA's stringent standard, the state court decisions regarding Petitioner's PCRA petition constitute "an unreasonable application of clearly established federal law." 28 U.S.C. § 2254(d)(1). Thus, for the purposes of the instant Petition, the Court will apply the AEDPA standard.

## C. Petitioner's Claim of Ineffective Assistance of Counsel

The federal standard for ineffective assistance of counsel claims derives from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court held that to prevail on such a claim, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. 2052; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. This standard applies to both trial and appellate counsel. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) ("[T]he proper standard for evaluating [a] claim that appellate counsel was ineffective ... is that enunciated in *Strickland* ...."). The ineffectiveness prong requires defendant to show that "counsel's actions were not supported by a reasonable strategy," *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003), in light of "all the circumstances." *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992). Regarding the prejudice requirement, the Supreme Court held that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. This standard requires "less than a preponderance of the evidence." *United States v. Cross,* 308 F.3d 308, 315 (3d Cir.2002).

### 1. Ineffectiveness

The substance of Petitioner's claim is that his appellate counsel was constitutionally ineffective in failing to raise the *Besch* decision on direct appeal. The Superior Court did not address this claim directly but implied that to raise *Besch* on direct appeal would have been fruitless because the issue had been waived by Petitioner's failure to include it in post-trial motions. *Wilson,* 799 A.2d 177. Thus, the rationale behind the Superior Court's rejection of this claim appears to be that counsel was not ineffective in failing to raise *Besch* on appeal because he was procedurally prohibited from doing so by virtue of having "failed" to preserve the issue after trial. However, regarding Petitioner's corollary

claim that counsel was ineffective in failing to raise *Besch* in post-trial motions, the Superior Court upheld the rejection of this claim in Petitioner's PCRA petition on the grounds that "counsel cannot be deemed ineffective for failing to predict a change in the law." *Id.* at 7, 674 A.2d 655.

■ These holdings are internally inconsistent, for as the Superior Court itself noted in rejecting the claim of counsel's post-trial ineffectiveness, *see id.*, *Besch* could not possibly have been raised in post-trial motions because it did not yet exist. In contrast, it is indisputable that Petitioner *could* have raised *Besch* on direct appeal. *See Shaffer*, 734 A.2d at 844 (reversing PCOA conviction of defendant whose direct appeal was pending when *Besch* was decided).[9] Thus, the Superior Court opinion does not provide a plausible rationale for Mr. McMahon's omission of the *Besch* issue on appeal. Accordingly, this Court finds that the Superior Court's *Strickland* analysis constitutes "an unreasonable application of clearly established federal law" because despite Petitioner's showing that he was entitled to have his PCOA conviction vacated, the court failed to identify any reasonable strategy under which counsel might have chosen not to do so.

■ Having determined that the Superior Court applied *Strickland* unreasonably, this Court must still determine whether counsel's failure to raise *Besch* on appeal constitutes ineffectiveness under the first prong of *Strickland*. There are only two possible causes for counsel's inaction: (1) Appellate counsel was not aware of *Besch;* or (2) he was aware of *Besch* and chose not to raise it. Regarding the first possibility, the Court finds that if McMahon did not conduct sufficient research regarding the PCOA to determine that Petitioner had an indisputable legal defense to the charge thereunder, McMahon did not function at the minimum standards required by the Sixth Amendment. *See Strickland*, 466 U.S. at 688, 104 S.Ct. 2052 (noting that Sixth Amendment relies on legal profession to ensure that counsel "fulfill the role in the adversary process that the Amendment envisions"); *see also Fagan v. Washington*, 942 F.2d 1155, 1157 (7th Cir.1991) ("No tactical reason ... other than oversight or incompetence ... can be assigned for the lawyer's failure to raise the only substantial claims that Fagan had."); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Had appellate counsel failed to raise a significant and obvious issue, the failure could be viewed as deficient performance."); *Commonwealth v. Balenger*, 704 A.2d 1385, 1390–91 (Pa.Super.1997) (affirming grant of state habeas petition where appellate counsel failed to raise new Pennsylvania Supreme Court precedent on appeal); *cf. Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2538, 156 L.Ed.2d 471 (2003) (reversing denial of ineffective assistance of counsel claim where counsel's failure to conduct factual investigation of client's case was "objectively unreasonable"). In other words, if appellate counsel was unaware of a clear and indisputable legal defense to one of the charges Petitioner faced, counsel did not perform the service required of him by

9. Although this determination requires this Court to engage in the application of state law, it does so only to the extent necessary to evaluate whether the Superior Court's application of *Strickland* to Petitioner's ineffectiveness claim was reasonable under AEDPA. As the Tenth Circuit has stated, "[t]he problem in this type of case is that the federal constitutional question, ineffective assistance of counsel, in turn rests entirely on a question of state, not federal, law. In such circumstances, we do not sit as a court of review of state law except in the most narrow sense." *Jackson v. Oklahoma Dept. of Corr.*, 18 Fed. Appx. 678, 683, 2001 WL 987595, at *5 (10th Cir.2001).

the adversarial process. *See Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

Nonetheless, counsel cannot be deemed ineffective if his actions, while ultimately unsuccessful, were part of a "sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (quotation omitted). Thus, the Court must consider the possibility that appellate counsel was aware of *Besch,* yet made a strategic decision not to raise it. The only possible rationale of which the Court can conceive would be that raising *Besch* would be fruitless because vacating the PCOA conviction would not affect his client's life sentence for murder. This hypothetical strategy, however, would not only have reflected an incorrect view of the law, *see Wilson,* Philadelphia 1995, slip op. at 3–5 (noting prejudicial impact of PCOA-related evidence on non-PCOA charges and upholding admission of evidence in part on PCOA grounds), but it would also have been at odds with the strategy actually pursued by counsel, who raised many other vigorous challenges to the PCOA-related evidence at trial and on appeal. *See id.* In light of these arguments actually made by counsel, it seems clear that McMahon realized the danger that this evidence posed to his client, and thus there is no rational basis upon which he might have chosen to omit *Besch,* which was a far stronger argument leading to his desired result, namely exclusion of the PCOA-related evidence. *See United States v. Cook,* 45 F.3d 388, 395 (10th Cir.1995) ("[A]n appellate advocate may deliver deficient performance ... by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal."); *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994) ("[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."); *Fagan,* 942 F.2d at 1157 (upholding grant of habeas petition where appellate counsel failed

to argue "winning claim" that evidence was insufficient to support conviction); *Gray,* 800 F.2d at 646 ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."); *see also Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (noting that although appellate counsel need not raise all possible claims, counsel is expected to "maximize the likelihood of success on appeal"). Accordingly, the decision to omit *Besch*—if this was indeed a conscious decision—was not made as part of a reasonable legal strategy pursued by appellate counsel, and the ineffectiveness prong of *Strickland* is therefore satisfied.

### 2. *Prejudice*

■ As noted previously, in order to obtain relief Petitioner must show that the ineffectiveness of his counsel "undermine[d] confidence in the outcome" of his trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In this case, the alleged prejudice is that if counsel had raised *Besch* on appeal, the Superior Court would have vacated Petitioner's PCOA conviction. *See Wilson,* No. 2360 EDA 2000, slip op. at 6 ("[I]f *Besch* were applied to Wilson's case, the evidence would be insufficient to sustain Wilson's conviction of corrupt organizations."). This, Petitioner argues, would have led the Superior Court to determine that in light of the non-murder-related evidence introduced at trial to support the PCOA charge, Petitioner's trial was so infused with prejudicial and irrelevant evidence that a new trial was warranted.

Petitioner's argument in this regard is more than mere speculation, for his co-defendant Christopher Williams has already been granted a new trial on these very grounds. *Williams,* Nos. 1770–96, 1825–46, slip op. at 3 ("[W]e find that there

was an opportunity to raise ... *Besch* during the appeal of this case, and that had appellate counsel done so, Supreme Court precedent would have required that the [PCOA] conviction be reversed."). In its decision vacating Williams' conviction and sentence, the Court of Common Pleas held that "[c]learly, there was a mass of highly prejudicial evidence presented to the jury, which it would never have heard, had there been no Corrupt Organizations charge." *Id.* The court went on to hold that a death sentence should not be imposed based upon such evidence. *Id.* at 3–4, 674 A.2d 655.

Although the instant petitioner does not face a death sentence, the Court finds the logic of the Court of Common Pleas equally applicable here.[10] Petitioner was convicted of three murders after the jury heard a substantial amount of evidence relating to gun sales that occurred long after the murders. It is difficult to believe that this evidence did not influence the jury regarding the murder charges, especially given that both the charges and the prejudicial evidence involved allegations of Petitioner engaging in illegal gun sales. Thus, it "undermines confidence in the outcome" of the trial to know that the PCOA charge upon which the admission of this evidence was based would likely have been vacated on appeal if Petitioner's counsel had not been ineffective, and that there is a reasonable probability that the murder convictions would also have been vacated in light of the highly prejudicial evidence unrelated to those charges. *See Gray,* 800 F.2d at 646 ("If an issue which was not raised may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial."); *see also Balenger,* 704 A.2d at 1390–91 (affirming grant of state habeas petition based on

"reasonable probability that [petitioner] would have been awarded a new trial on direct appeal" had appellate counsel raised intervening change in governing precedent). Accordingly, the Court holds that Petitioner was prejudiced by his counsel's ineffectiveness, in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Superior Court decision upholding the dismissal of Petitioner's state habeas corpus petition was an unreasonable application of clearly established federal law, and that Petitioner's counsel on direct appeal was constitutionally ineffective, resulting in prejudice to Petitioner. Accordingly, the Court declines to adopt the Report and Recommendations of the Magistrate Judge. Instead, the Court grants Theophalis Wilson's petition for a writ of habeas corpus and vacates his August 6, 1993 convictions for first-degree murder, robbery, criminal conspiracy, violation of the PCOA, and possession of an instrument of crime. An appropriate Order follows.

### ORDER

AND NOW, this 10th day of **February,** 2004, upon consideration of Theophalis Wilson's Petition for a Writ of Habeas Corpus, the response thereto, the Report and Recommendation of the Magistrate Judge, and the objections thereto, it is hereby **ORDERED** that:

1. The Report and Recommendation of the Magistrate Judge (Document No. 32) is **REJECTED.**

---

**10.** In addition, the Court finds it incongruous that Williams, who was deemed deserving of the death penalty, was granted habeas relief in state court, while Petitioner, arguably the less culpable defendant, was denied relief sought on nearly identical grounds.

2. Theophalis Wilson's Petition for a writ of habeas corpus is **GRANTED**.

3. Petitioner's convictions of August 6, 1993 for first-degree murder, robbery, criminal conspiracy, violation of the Pennsylvania Corrupt Organizations Act, and possession of an instrument of crime are **VACATED**, and a new trial is ordered.

4. The Clerk of Court is directed to close this case.