John Joseph BLASI, Petitioner,

v.

ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA, Respondent.

No. 4:CV–98–1545.

United States District Court,
M.D. Pennsylvania.

Oct. 2, 2000.

454

Melinda Christina Ghilardi, Assistant Federal Public Defender, Scranton, PA, for petitioner.

William P. Malley, Assistant District Attorney, Scranton, PA, for respondent.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On September 18, 1998, petitioner John Joseph Blasi, an inmate at the State Correctional Institution at Waymart, Wayne County, Pennsylvania, commenced this action with the filing of a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Blasi was convicted in 1994 in the Court of Common Pleas of Lackawanna County of four counts of involuntary deviate sexual intercourse, two counts of indecent assault, and one count each of corruption of a minor, endangering the welfare of a child, and indecent exposure. Two consecutive terms of incarceration for a period of 60 to 120 months were imposed, combining vari-

ous counts relative to each term. Blasi's total sentence was 120 to 240 months' incarceration.

On direct appeal, the Superior Court affirmed the judgment of conviction and sentence, *Commonwealth v. Blasi*, 444 Pa.Super. 672, 663 A.2d 244 (1995) (table), and the Supreme Court denied a petition for allocatur, *Commonwealth v. Blasi*, 542 Pa. 640, 666 A.2d 1050 (1995) (table). Before the Supreme Court ruled, Blasi filed a petition under the state Post Conviction Relief Act (PCRA), 42 Pa. Cons.Stat. Ann. §§ 9541 et seq., which was denied by the trial court. The Superior Court again affirmed, *Commonwealth v. Blasi*, 711 A.2d 1037 (Pa.Super.Ct.1998) (table), and the Supreme Court again denied allocatur. *Commonwealth v. Blasi*, 556 Pa. 670, 727 A.2d 127 (1998) (table). [Hereafter, written opinions of the state courts before which Blasi appeared are cited in their unpublished form.]

A prior action by Blasi challenging the jury selection process in Lackawanna County under 42 U.S.C. § 1983 was dismissed because § 1983 is an improper vehicle for challenging the validity of a state conviction. *Blasi v. Barrasse*, No. 4:CV-94–0757 (M.D.Pa. Sept.6, 1994) (relying on *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).

Blasi filed the original petition *pro se*, but we appointed counsel in an order (with an accompanying memorandum) issued on December 17, 1998. Before service was made, the petition was reviewed by U.S. Magistrate Judge Raymond J. Durkin, who recommended that the petition be dismissed as untimely in part and otherwise for failure to exhaust state remedies. We adopted the report and recommendation as amended by our Memorandum and Order of Court dated December 17, 1998. The petition was dismissed as a mixed petition under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), and it progeny. However, we appointed counsel and granted leave to file an amended petition, to proceed only with the exhausted

claims, or to return to state court to exhaust further claims. *Blasi v. Attorney General of Commonwealth of Penna.*, 30 F.Supp.2d 481 (M.D.Pa.1998).

An amended petition for a writ of habeas corpus was filed on April 14, 1999, and Magistrate Judge Durkin thereafter directed a response to the petition. The Office of the Attorney General of Pennsylvania referred the matter to the District Attorney for Lackawanna County, and that office represents the Commonwealth.

Before the court is a second report and recommendation by Magistrate Judge Durkin, which recommends that the petition be denied.

## DISCUSSION:

### I. STANDARD: REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

A district court is required to review *de novo* those portions of a magistrate judge's report to which objections are made. *Commonwealth of Penna. v. United States*, 581 F.Supp. 1238, 1239 (M.D.Pa.1984); 28 U.S.C. § 636(b)(1). When no objections are filed to the report of a magistrate judge, a court has discretion to review that report as it deems appropriate. A magistrate judge's finding or ruling on a motion or issue properly becomes the holding of the court unless objections are filed. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). However, the district court may not grant a motion for summary judgment, Fed.R.Civ.P. 56, or a motion to dismiss under Fed.R.Civ.P. 12(b)(6) solely because the motion is unopposed; such motions are subject to review for merit. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 174 (3d Cir.1990).

Blasi has objected to the report and recommendation as it addresses each of his claims; we therefore review the matter *de novo*.

## II. STATEMENT OF FACTS

To explain the relationships among the persons involved and to place events into context, we begin with events occurring well before the incidents giving rise to the charges against Blasi. In 1983, Blasi's divorce from his first wife became final. He met and began to date Joanne Kester, and moved in with her in 1984. They resided in Scranton, Pennsylvania. Joanne had two sons, David and Michael. While both were Joanne Kester's sons, they had different fathers. Joanne's first husband, Francis Kester, adopted David as his son. Francis Kester is Michael Kester's natural father.

In 1988, Blasi married Joanne and became the stepfather of David and Michael. At the time of the marriage, Michael was nine or ten years old.[1] That same year, Blasi injured his right shoulder while working as a nurse's aide. He testified during his trial that the injury never fully healed.

Apparently, the marriage was stormy. There was testimony at trial that Blasi physically abused his wife and stepsons, and both Blasi and Joanne testified that they argued frequently. In 1991, Joanne filed for a protection-from-abuse ("PFA") order, and Blasi was required to stay away from her. On the day before a hearing related to the PFA order, Blasi filed a complaint for divorce. A reconciliation was effected, however, and Blasi returned to Joanne's home.

On January 27, 1992, Blasi injured his left shoulder while working at a furniture company, after which he was on "disability" for a period of time. Blasi had to undergo medical treatment and physical therapy, and his arm was in a sling for at least part of the time. According to Blasi's own testimony, the injury mostly affected the range of motion in the arm.

Throughout this period, David Kester, the older of Joanne's sons, had disciplinary problems. In an attempt to address those problems, Joanne went to Lackawanna County Children and Youth Services (CYS). One of the measures attempted was to send David to live with an aunt, Joanne's sister, in the Allentown area. Once there, David told the aunt that there might be problems with Blasi being at home alone with Michael. The aunt called Joanne and advised her to seek counseling for Michael, which Joanne did.

After initial reticence, Michael told the counselor, Robert Frein, of incidents which occurred at home while his mother was working. These consisted of Blasi watching pornographic movies and masturbating, then having Michael masturbate. During subsequent interviews with Frein and either police or CYS personnel, Michael related that the incidents also involved Blasi touching Michael (including both masturbation and performing oral sex), and vice versa. Eventually, Michael told of two instances in which Blasi anally penetrated Michael.

Michael was unable to specify the dates on which the incidents, numbering either four or five altogether, took place. However, they began in either late February or early March, 1992, and ended in late March or April of the same year. Michael estimated the dates based on their relation to his birthday.

After a jury trial in the Court of Common Pleas of Lackawanna County,[2] Blasi was found guilty of involuntary deviate sexual anal intercourse, involuntary devi-

---

1. In his testimony, Michael estimated his age at the time of the marriage. At the start of his testimony, he indicated that he was fourteen years old, N.T. 1/12/94 (record document no. 24) at 37, and later stated that his birthday is in March. *Id.* at 62. He therefore would have turned fifteen in March, 1994, and from this we conclude that Michael was born in March, 1979. When the incidents in question began in February or early March, 1992, he would have been twelve, and turned thirteen during the period encompassing the incidents in question.

2. The trial judge was the Honorable James M. Munley, now a judge of this court.

ate sexual intercourse, involuntary deviate oral intercourse (two counts), corruption of minors, endangering the welfare of children, indecent assault (two counts), and indecent exposure. Blasi was sentenced to two consecutive 5 to 10 year terms, each grouping various counts, for a total sentence of incarceration of 10 to 20 years.

## III. STANDARD: HABEAS CORPUS REVIEW AFTER AEDPA

■ The Commonwealth contends that Blasi has not exhausted his remedies in the state courts, so that the petition should be dismissed. Blasi argues that his claims have been exhausted and should be addressed on the merits. The court has authority to address unexhausted claims if the petition is denied. We therefore set forth the standards for exhaustion and for addressing a claim on the merits. Since the petition was filed after its effective date, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. 104–132, 110 Stat. 1217 (Apr. 24, 1996), govern. *Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 1486, 146 L.Ed.2d 435 (2000); *Lindh v. Murphy*, 521 U.S. 320, 326–327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Weeks v. Snyder*, 219 F.3d 245, 256 (3d Cir.2000).

Also, each of Blasi's claims asserts ineffective assistance of counsel based on a purported deficiency on the part of either trial or appellate counsel. We therefore set forth the standard governing claims of ineffective assistance.

### (A) Exhaustion

The statutory provision governing exhaustion of remedies by a state prisoner challenging his or her conviction reads:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

28 U.S.C. § 2254(b).

"Absent a valid excuse, a habeas petitioner must present all federal claims to the state courts." *Coss v. Lackawanna County D.A.*, 204 F.3d 453, 460 (3d Cir. 2000) (*en banc*; citing § 2254(b); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)). The exhaustion requirement serves the interest of comity and preserves the role of state courts in protecting federally guaranteed rights by allowing state courts to have the first opportunity to entertain federal constitutional challenges. *Id.* (quoting *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1230 (3d Cir.1992), *cert. dismissed*, 506 U.S. 1089, 113 S.Ct. 1071, 122 L.Ed.2d 498 (1993); further citation omitted).

■ Claims asserted in a petition under § 2254 are exhausted if the petitioner "fairly presented" the claims to each level of the state courts. *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir.2000). A claim is fairly presented for purposes of exhaustion if both the legal theory and the facts underpinning the federal claim have been presented to the state courts and the same method of legal analysis to be applied in federal court was available to the state courts. *Evans* at 1231. While the petitioner need not cite "book and verse" of the Constitution, a "somewhat similar state-law claim" is insufficient. *McCand-*

*less v. Vaughn*, 172 F.3d 255, 261 (3d Cir.1999). The factual and legal substance of the claim must be presented in such manner as to put the state courts on notice that a federal claim is being asserted. *Id.*

■ Some of the ways that a petitioner may fairly present a claim to the state courts without being explicit in asserting the claim as a federal constitutional claim include: "(a) reliance on pertinent federal cases employing a constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless* at 261–262 (citing *Evans* at 1232, which in turn quoted *Daye v. Attorney General of New York*, 696 F.2d 186 (2d Cir.1982) (*en banc* )).

■ The petitioner bears the burden of establishing exhaustion of state remedies. *Lines* at 159.

### (B) Review of Merits of Claims

If a petitioner has exhausted all of the claims in his or her petition, the federal court on habeas review may consider the merits of the claims, as provided in the following statutory language:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ A state court decision is "contrary to" Supreme Court precedent if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, that is, if the state court applies a rule that contradicts the governing law set forth in Supreme Court opinions; or (2) the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1519–1520, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application of" Supreme Court precedent if the state court's application of clearly established federal law was objectively unreasonable, as opposed to erroneous or incorrect. *Id.* at 1521–1522.

### (C) Ineffective Assistance of Counsel

A criminal defendant has a right to the effective assistance of counsel under the Sixth Amendment to the Constitution of the United States. "A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' . . . and (2) that counsel's deficient performance prejudiced the defendant. . . ." *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000)(citing *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). *See also Weeks* at 257.

■ In determining whether counsel's conduct is reasonable, a court must judge counsel's conduct in the context of the facts of the particular case, viewed as of the time of counsel's conduct, and must be highly deferential. *Flores–Ortega* at 1034–1035 (citing *Strickland* at 688–690, 104 S.Ct. 2052). When the claim of ineffective assistance is based on conduct during the course of a legal proceeding, the

defendant demonstrates prejudice by establishing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 1037; *Weeks* at 257. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *Weeks* at 260; *Coss* at 462.

## IV. BLASI'S CLAIMS

The claims Blasi asserts in his amended petition are:

I. Blasi was denied his Sixth Amendment right to effective assistance of pretrial and trial counsel.

A. Pretrial and trial counsel were ineffective for failing to secure a transcript of the preliminary hearing.

B. Pretrial and trial counsel were ineffective for failing to properly object to prosecutorial misconduct.

C. Pretrial and trial counsel were ineffective for failing to make and preserve appropriate objections.

D. Pretrial and trial counsel were ineffective for failing to file post-trial motions.

E. Pretrial and trial counsel were ineffective for failing to conduct reasonable and necessary pretrial preparation and investigation.

F. Pretrial and trial counsel were ineffective for failing to file pretrial motions raising a constitutionally defective jury selection process.

Amended Petition for Writ of Habeas Corpus at 2–3 ¶ 3. Each of these claims will be reviewed in turn for exhaustion as well as a review on the merits, if appropriate.

## V. PRELIMINARY HEARING TRANSCRIPT

On direct appeal, Blasi argued that trial counsel was ineffective for failing to obtain a transcript of the preliminary hearing. The Superior Court addressed the argument in a succinct manner:

Appellant's claim that trial counsel was ineffective for failing to obtain a transcript of the preliminary hearing must also be rejected. To prevail on a claim of ineffectiveness it must be demonstrated that counsel's action or inaction was prejudicial. See: *Commonwealth v. Hilton,* 400 Pa.Super. 579, 585, 584 A.2d 334, 337 (1990); *Commonwealth v. Rollins,* 525 Pa. 335, 344, 580 A.2d 744, 748–749 (1990); *Commonwealth v. Craig,* 345 Pa.Super. 542, 547, 498 A.2d 957, 959 (1985). Appellant has failed to demonstrate that he was prejudiced by the absence of a preliminary hearing transcript.

*Commonwealth v. Blasi,* No. 988 Philadelphia 1994, slip op. at 6 (Pa.Super.Ct. Apr. 28, 1995) (Exhibit C to record document no. 4). Of course, the Supreme Court of Pennsylvania did not address the issue since the petition for allocatur was denied.

The issue was raised a second time by Blasi in his PCRA petition. The trial court declined to address the issue as having been "previously litigated" under the PCRA. *Commonwealth v. Blasi,* No. 93 CR 96, slip op. at 10 (C.P. Lackawanna Cty. Mar. 20, 1997). *See also* 42 Pa. Cons.Stat. Ann. § 9544. On appeal from the denial of relief under the PCRA, the Superior Court found that the issue was previously litigated. *Commonwealth v. Blasi,* No. 1512 Philadelphia 1997, slip op. at 7 (Pa.Super.Ct. Jan. 30, 1998). However, it went on to address the issue, finding it to be "without merit." *Id.* Its reasoning was that it was not clear that Blasi actually expressed a desire that a transcript be requested since counsel testified that, had such a request been made, counsel would have deferred to the client's wish. Regardless, trial counsel's decision not to request that the preliminary hearing be recorded or transcribed was not unreasonable. *Id.* at 7–8.

As counsel pointed out, in child sexual assault cases, a victim may not come forward or may have problems with recollection. If the victim does not come forward,

the Commonwealth may introduce former testimony.[3] *Id.* at 8. To this, we would add that counsel is correct that recording and/or transcribing testimony at a preliminary hearing is a two-edged sword: The testimony may be used for impeachment, but it also may be used to buttress testimony as a recollection recorded when the event was fresh in the witness' mind. *See* Pa. R. Evid. 803.1(3) and Comment n. 3 (allowing use of recorded recollection when witness has insufficient present recollection; Rule consistent with Pennsylvania case law predating Blasi's trial).

■■■■ This claim gives rise to several issues. First, it appears that it was only at the PCRA stage that Blasi first claimed that there was prejudice arising from the failure to order the transcript. At that time, Blasi claimed that Michael testified at the preliminary hearing that the incidents took place on Saturdays, which would contradict his trial testimony that he did not know the days of the week on which the incidents occurred. Also, limiting the possible days on which the incidents occurred would have given Blasi a better chance of establishing an alibi. Therefore, the claim of ineffective assistance was not presented in the same manner on direct appeal as in its later incarnation, i.e. with specific instances of purported prejudice, and therefore was not exhausted in the form in which it now is presented.

In affirming the denial of PCRA relief, the Superior Court went on to consider the merits of the claim despite finding that the claim was previously litigated. The magistrate judge concluded that this was the last state court to consider the claim on the merits, and therefore reviewed the claim on the merits, applying the "unreasonable application" standard. The Superior Court, however, expressed doubt of its own authority to consider the claim once it found the claim previously litigated. It is questionable, then, that the Superior Court's discussion may be considered a proper discussion of the merits.

Another issue arises with respect to whether Blasi failed to develop the factual basis for the claim in state court. *See* 28 U.S.C. § 2254(e)(2). Since Blasi did not establish of record the testimony from the preliminary hearing which was necessary at trial, he did not establish prejudice on direct appeal. The PCRA court did not reach the merits of the claim at all, and the Superior Court addressed only the conduct of counsel as falling below the minimum level of competence. Neither court found that Michael in fact testified as Blasi now claims that he did at the preliminary hearing.

Regardless of these issues, we will address the claim on the merits because we have the authority to do so under § 2254(b)(2).

■■■■ The decision by counsel was made before the preliminary hearing, and it is the facts and circumstances then known to counsel which must be the context in which the decision is considered. At that time, counsel would know that his client was charged with several instances of sexual assault on a minor, and that the minor will testify and describe the incidents which gave rise to the charges. While it is true that a transcript of that testimony may contain impeachment material, it is also true that preserving the testimony will give the Commonwealth a record of the testimony should the victim not appear at trial. Further, there would be a record of the testimony closer in time to the events for purposes of proving events which may fade from the victim's

---

3. *See generally* 42 Pa. Cons.Stat. Ann. § 5917 (allowing former testimony to be admitted under certain circumstances); *Commonwealth v. Melson*, 432 Pa.Super. 1, 637 A.2d 633, 637–638 (former testimony admissible when witness unavailable through no fault of prosecution; unavailability not limited to situations described in § 5917), *allocatur denied*, 538 Pa. 633, 647 A.2d 509 (1994) (table). The rule now is embodied in Pa. R. Evid. 804(b)(1).

testimony. Anticipating that a child victim will not appear for trial for fear of facing his abuser or out of embarrassment, or that a child victim would have a loss of memory of even important events, seems to us a reasonable view.

Again, this type of evidence presents a two-edged sword. There may be impeachment material, or evidence which would support an affirmative defense such as an alibi. Conversely, there also may be damaging evidence which is preserved for introduction at trial when it otherwise might be unavailable. The unavailability is more likely in a case of child sexual assault. Counsel cannot know before the preliminary hearing whether the positive uses to which a transcript can be put would outweigh the negative effects to which preserving the testimony might give rise. Under such circumstances, it would be well within the range of conduct to be expected of competent counsel to decline to request a transcript of the proceedings at a preliminary hearing. Actually, the fact that a request must be made before a transcript or recording will be made of a preliminary hearing suggests strongly that such is not a matter of routine, so that counsel in this case cannot be said to be an exception in not obtaining a transcript of a preliminary hearing.

Blasi is not entitled to relief on his claim that counsel was ineffective for failing to obtain a transcript of the victim's testimony at the preliminary hearing.

## VI. PROSECUTORIAL MISCONDUCT

The magistrate judge concluded in the report and recommendation that Blasi failed to exhaust his state remedies with respect to the claim of ineffective assistance of counsel for failure to object to instances of prosecutorial misconduct. This conclusion was based on a finding that Blasi had not filed a petition for allocatur with the Supreme Court of Pennsylvania after the Superior Court affirmed the conviction on direct appeal. While this finding was in error because Blasi did, in fact, petition for allocatur, the claim still was not presented to the Supreme Court of Pennsylvania.

The Superior Court rejected the claim because Blasi asserted no factual basis for it: "Appellant's averments, however, are too general and, therefore, inadequate." *Commonwealth v. Blasi*, No. 988 Philadelphia 1994, slip op. at 8 (Pa.Super.Ct. Apr. 28, 1995). The basic point being made is that Blasi failed to point to specific moments at which counsel should have objected because "counsel will not be found ineffective in a vacuum." *Id.* (citations omitted).

Blasi appends to his objections to the report and recommendation a copy of his petition for allocatur during the direct appeal stage to support his objection. Of course, as was recited in our prior memorandum, the court was aware that such a petition had been filed due to a published table indicating that allocatur had been denied. *See* 30 F.Supp.2d at 483 (citing table at 666 A.2d 1050). However, a review of the issues presented in Blasi's petition for allocatur reveals that the claim of ineffective assistance of counsel for failure to object to instances of prosecutorial misconduct was *not* raised, and so the claim was not exhausted on direct appeal, at least insofar as a claim heretofore has been considered exhausted. As discussed at length below, that has changed.

 Like the claim of ineffective assistance for failure to obtain a transcript of the preliminary hearing, the Court of Common Pleas found the claim relating to the failure to object to prosecutorial misconduct barred on PCRA review because it had been previously litigated. *Commonwealth v. Blasi*, No. 93 CR 96, slip op. at 10 (C.P. Lackawanna Cty. Mar. 20, 1997). The claim was not presented to the Superior Court on appeal from the denial of PCRA relief. Plainly, then, the issue was both previously litigated, 42 Pa. Cons.Stat. Ann. § 9544(a), and waived, § 9544(b), and

therefore may not be the subject of further PCRA proceedings. 42 Pa. Cons.Stat. Ann. § 9543(a)(4). *See also Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, 303 and n. 7 (1999) (former "relaxed waiver" rule in capital cases no longer applicable, so that Pennsylvania courts strictly adhere to statutory language of PCRA and will entertain waived claims only if statutory exceptions apply), *cert. denied,* 528 U.S. 975, 120 S.Ct. 422, 145 L.Ed.2d 330 (1999).

■ An unexhausted claim will not be considered by a federal court conducting habeas review, and a petition containing both exhausted and unexhausted claims, a "mixed petition," must be dismissed so that the petitioner may present the unexhausted claims to the state courts. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, the petition is not a "mixed petition" when the claim is procedurally barred under state law. *Toulson v. Beyer,* 987 F.2d 984, 987 (3d Cir.1993). The reason is that exhaustion is not possible when the state court would find the claim procedurally defaulted. *Id.* (citing, *inter alia, Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 2555 and n. 1, 115 L.Ed.2d 640 (1991)). The federal court will review only those claims that have been exhausted, and will not consider any claim which is procedurally barred. *Id.*

■ A claim will be procedurally barred for purposes of habeas review only when state law clearly forecloses state court review of the claim, *id.,* requiring that the rule embodying the procedural bar be consistently or regularly applied. *Banks v. Horn,* 126 F.3d 206, 211 (3d Cir.1997). Technically, such a claim is exhausted because state court review is no longer available, but the state procedural bar provides an independent and adequate ground for the judgment under state law which forecloses federal habeas review. *Gray v. Netherland,* 518 U.S. 152, 161–162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996).

Given the holding by the Supreme Court of Pennsylvania that, even in capital cases, the language of the PCRA must be applied strictly and there no longer is any "relaxed waiver" standard, we have no trouble concluding that the same strict construction rule would apply in non-capital cases such as Blasi's, and collateral review of the claim of ineffective assistance for failure to object to prosecutorial misconduct is "clearly foreclosed" under state law. This conclusion is buttressed by the holding of the Court of Common Pleas that the claim was barred as previously litigated.

■ There has been, however, an interesting development in the law of exhaustion as it applies to petitions for allocatur in the Supreme Court of Pennsylvania. On May 9, 2000, the Court issued an order stating that a petition for allocatur is not necessary for exhaustion prior to commencing habeas proceedings. The order reads:

**AND NOW,** this 9th day of may, 2000, we hereby recognize that the Superior Court of Pennsylvania reviews criminal as well as civil appeals. Further, review of a final order of the Superior Court is not a matter of right, but of sound judicial discretion, and an appeal to this Court will only be allowed when there are special and important reasons therefor. Pa.R.A.P. 1114. Further, we hereby recognize that criminal and post-conviction relief litigants have petitioned and do routinely petition this Court for allowance of appeal upon the Superior Court's denial of relief in order to exhaust all available state remedies for purposes of federal habeas corpus relief.

In recognition of the above, we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has been presented

to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief.

This Order shall be effective immediately.

*In re: Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (*per curiam*).[4] *See also* William P. Murphy, *State High Court Signals Sea Change in Federal Habeas,* PENNA. LAW WEEKLY, May 29, 2000, at 12.

Of course, it may be argued that failing to petition at all is different from omitting a claim from a petition for allocatur, as Blasi did in this case. However, the last sentence of the second paragraph of the order is very general, stating that a final order denying any claim which has been reviewed by the Superior Court is sufficient for exhaustion. We therefore conclude that the order governs Blasi's claim on direct appeal. The next issue is whether the May 9, 2000, order governs our review for exhaustion purposes.

 At first blush, it would seem odd that a state court might dictate to a federal court the interpretation of a federal statute. After all, the statute provides that a writ may not issue unless "the applicant has exhausted the remedies available in the courts of the State..." 28 U.S.C. § 2254(b)(1)(A). The subsection governing exhaustion formerly, i.e. before AEDPA, provided that a claim was not exhausted while the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. former § 2254(c). *See also Castille v. Peoples,* 489 U.S. 346, 350, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (quoting same provision in holding that presentation of claim for first time in petition for

allocatur to Supreme Court of Pennsylvania is not "fair presentation" of claim). This provision was preserved in AEDPA. *See* current § 2254(c). However, the exhaustion doctrine is not a jurisdictional prerequisite, but a rule of comity. *Castille* at 349, 109 S.Ct. 1056. The exhaustion doctrine creates a strong presumption in favor of requiring a petitioner to pursue available state remedies, *id.,* though the presumption is not conclusive. *See Rose* at 515, 102 S.Ct. 1198 (exhaustion required "except in unusual circumstances").

In *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), the Supreme Court held that discretionary review by a state's highest court is an available procedure, so that the failure to present the claim in a petition for discretionary review was a failure to exhaust the claim.

Much of the discussion in *O'Sullivan* related to the administrative burden the holding would place on the high courts of the states when prisoners would recite a laundry list of claims in a petition for discretionary review, not because the claims were of such merit and the issues were of such importance that they expected the petition to be granted, but because they wanted to preserve the issues for federal habeas review. *Id.* at 847, 119 S.Ct. 1728 (majority opinion by O'Connor, J.), at 849–850, 119 S.Ct. 1728 (Souter, J., concurring), at 861–862, 119 S.Ct. 1728 (Stevens, J., dissenting), at 862–864, 119 S.Ct. 1728 (Breyer, J., dissenting). In the majority opinion, Justice O'Connor pointed out that a state simply could make discretionary review "unavailable," *id.* at 847–848, 119 S.Ct. 1728 at least so that it would be the equivalent of an exceptional remedy and not part of the ordinary appellate process, to avoid the administrative burden.

In making this point, Justice O'Connor cited *In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 321 S.C. 563, 471 S.E.2d 454 (1990);

---

4. The May 9, 2000, order has been published in the Pennsylvania Reporter version of the

Atlantic Reporter Second Series, vol. 749–750 at CXIV.

*State v. Sandon,* 161 Ariz. 157, 777 P.2d 220 (1989) (*in banc, per curiam*). The Court did not hold that an order of a state's highest court that a petition for discretionary review is unnecessary for exhaustion would suffice as a waiver, and to the extent this discussion may be read as suggesting that such an order would limit the need to exhaust to the state's intermediate appellate court, it properly may be read as *obiter dicta.* That is, the state from which the case arose, Illinois, did not have a rule or order from its high court to the effect that it did not want petitions for discretionary review filed solely for comity purposes, and the principles underlying *In re Exhaustion* and *Sandon* do not govern the outcome.

■■■ However, given the Supreme Court's paramount position in our three-tier system and its limited docket, we are required to give its dictum great deference; the Court uses dictum to provide guidance to lower courts and to control and influence issues it cannot decide. *In re McDonald,* 205 F.3d 606, 612–613 (3d Cir.2000); *Alston v. Redman,* 34 F.3d 1237, 1247 (3d Cir.1994), *cert. denied,* 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); *Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.,* 959 F.2d 468, 495–496 n. 41 (3d Cir.), *cert. denied,* 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992). In this case, the Supreme Court in *O'Sullivan* left open the possibility that an order of the state's high court could satisfy comity and effectively waive the exhaustion requirement, as emphasized in the concurring and dissenting opinions. *Id.* at 849–850, 119 S.Ct. 1728 (Souter, J., concurring); at 861–862, 864, 119 S.Ct. 1728 (Stevens, J., and Breyer, J., dissenting). The majority's citation to two instances in which state courts had done so is strongly suggestive that this means of waiving the exhaustion requirement would be upheld by the Supreme Court of the United States, and those Justices who concurred and dissented in *O'Sullivan* would so hold. In these circumstances, we be-

lieve that we are bound to hold, and we do hold, that the order of the Supreme Court of Pennsylvania waives the exhaustion doctrine insofar as the doctrine requires a petitioner under § 2254 to present claims to the Supreme Court of Pennsylvania in a petition for allocatur prior to presenting them in federal court.

In reaching this conclusion, we must express great reservation about this holding, both as a matter of reading *O'Sullivan* and as a matter of policy. To place our concerns into context, we begin with a short discussion of the development of the questioned principle.

Ironically, the evolution begins with a decision by the Supreme Court of Arizona which had nothing to do with exhaustion as the term is used in federal habeas corpus jurisprudence. In *State v. Shattuck,* 140 Ariz. 582, 684 P.2d 154 (1984) (*in banc*), the defendant pled guilty to charges relating to sexual conduct with minors but wanted to challenge the sentence. Counsel for the defendant filed an appeal and brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Court of Appeals (the intermediate appellate court in Arizona) affirmed after reviewing the merits of the issue raised and reviewing the record for error. The defendant then demanded that counsel file a petition for review by the state Supreme Court. Counsel submitted a petition for review of the length of the sentence, and added an issue of counsel's duties relating to a petition for review when counsel does not believe a petition is required. *Id.* at 583–584, 684 P.2d at 155–156.

The Supreme Court of Arizona concluded that counsel did not have the responsibility to file a petition for review by that Court because the defendant's only appeal as of right was to the Court of Appeals. In reaching this conclusion, it stated, "In cases other than those carrying a life sentence or the death penalty, a decision by the court of appeals and its search for error exhausts a defendant's right of ap-

peal in this jurisdiction." *Id.* at 585, 684 P.2d at 157.

In *Sandon,* the Supreme Court of Arizona expanded the holding of *Shattuck* to apply to the availability of a remedy. The defendant was one of several inmates who were convicted of conspiracy to introduce firearms into a state prison or the substantive offense. The Court of 'Appeals reviewed 13 issues on appeal, 12 of which applied to Sandon. After the conviction was affirmed, counsel for Sandon filed a petition for review with the state Supreme Court which raised three issues. The petition for review was denied. *Sandon* at 157, 777 P.2d 220.

Sandon next filed a petition under § 2254 in federal district court, which dismissed the petition without prejudice because Sandon had not exhausted his state remedies because eight of the issues raised in his § 2254 petition had not been presented in the petition for review by the Arizona Supreme Court. Sandon then filed a second petition with the state Supreme Court. That Court first noted that the right to an appeal is limited to the appeal to the Court of Appeals. It relied on *Shattuck* for the proposition that when the defendant has been given the first appeal as of right, state remedies have been exhausted. It therefore dismissed the second petition. *Sandon* at 158, 777 P.2d at 221.

One other important aspect of *Sandon* is that the Supreme Court of Arizona indicated that it would have disposed of the second petition for review with a summary order rather than in an opinion but for the fact that "the Court continues to receive large numbers of prisoner petitions seeking to exhaust state remedies..." *Id.* at 157, 777 P.2d 220.

The rather glaring problem with *Sandon,* of course, is that it directly contradicts *O'Sullivan.* The petitioner in federal habeas corpus proceedings had failed to include his federal claims in a petition for discretionary review by the state's high court and the § 2254 petition was dismissed. The Supreme Court of Arizona held that the state remedies had been exhausted because the petitioner did not have the right to review in that court, while the Supreme Court of the United States held that such review is an available remedy as a normal part of the appellate process. *Compare O'Sullivan* at 843, 119 S.Ct. 1728 (quoting Ill. Sup.Ct. R. 315(a) for factors to be considered by Supreme Court of Illinois in deciding whether to grant discretionary review) *with* Ariz. R.Crim. P. 31.19.c.3 (setting forth similar factors to be considered by Supreme Court of Arizona in deciding whether to grant discretionary review). Remarkably, not one Justice noted that the holding of *O'Sullivan* was directly contrary to that of *Sandon.*

Regardless, the next court to take action to deem presentation of a claim to a state intermediate appellate court as exhaustion for purposes of federal habeas review was the Supreme Court of South Carolina, which issued the following order:

In 1979, the General Assembly created the South Carolina Court of Appeals for the purpose of reducing South Carolina's appellate backlog. The Court of Appeals reviews criminal as well as civil appeals, and this Court reviews its decisions by writ of certiorari only where special reasons justify the exercise of that power.

We recognize that criminal and post-conviction relief litigants have routinely petitioned this Court for writ of certiorari upon the Court of Appeals' denial of relief in order to exhaust all available state remedies.[1] We therefore declare that in all appeals from criminal convictions or post conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Ap-

peals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies. This order shall become effective immediately.

1 *See* 28 U.S.C.A. § 2254(b)–2254(c)(1977).

*Re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 321 S.C. 563, 471 S.E.2d 454 (1990).

In substance, the order of the Supreme Court of South Carolina is virtually identical to that of the Supreme Court of Pennsylvania, and contains the same questionable aspects. The order, on its face, is an attempt by a state court to determine an area of federal law which is the exclusive province of the federal courts. That is, the Supreme Court established the exhaustion doctrine as a prerequisite to federal habeas review, and the doctrine was codified by Congress. The question is whether a particular form of, or avenue for, relief under state law is "available" to a person challenging a conviction under state law. The states define the form of relief and outline the procedure for obtaining relief, and federal courts determine whether that relief is "available" for purposes of habeas corpus relief and the exhaustion doctrine.

This view is consistent with the language actually employed by the Supreme Court of the United States in *O'Sullivan.* After noting that some state courts may not wish the increased burden imposed by the requirement of exhaustion, the Court continued:

Under these circumstances, Boerckel may be correct that the increased, unwelcome burden on the state supreme courts disserves the comity interests underlying the exhaustion doctrine. In this regard, we note that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has "the right *under the law of the State to raise, by any*

*available procedure,* the question presented" (emphasis added). The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available. We hold today only that the creation of a discretionary review system does not, without more, make review in the Illinois Supreme Court unavailable.

*O'Sullivan* at 847–848, 119 S.Ct. 1728.

In this case, since our inquiry depends on whether discretionary review is an "available" procedure under Pennsylvania law, we believe that our answer must be "yes," because allocatur is analogous to the discretionary review which the Supreme Court found to be "available" under Illinois law. The order issued by the Supreme Court of Pennsylvania does not make allocatur unavailable, since the actual procedure, scope of review, etc., has not changed.

 The difficulty as we perceive it is that the orders issued by both the Supreme Court of Pennsylvania and the Supreme Court of South Carolina appear to conflate making a remedy unavailable with waiving the requirement of exhaustion with respect to an available remedy. The basic idea is that the remedy is available but the petitioner need not avail himself or herself of the remedy, as far as the Supreme Court of Pennsylvania is concerned. "Thanks for the comity, federal courts, but no thanks." That this confusion exists is reflected in the language used in the orders we have quoted to the effect that the petitioner need not apply for discretionary review to have been "deemed" to have exhausted state remedies. The crux of the matter is that it is the federal courts which do the "deeming," not the state courts.

What the orders really mean, then, is that the state courts want to waive the exhaustion requirement. Not surprisingly,

that action gives rise to further difficulties. Section 2254(b)(3) provides that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." That provision appears to indicate that we may not "deem" the requirement waived by an order of the state's high court, nor does the high court's order estop the Commonwealth from relying on the exhaustion requirement. Rather, for each and every petition filed under § 2254, counsel for the Commonwealth (whether it is the Office of the Attorney General or the local District Attorney's Office) would have to waive the requirement expressly.

Another way to view this problem is by questioning whether a state's high court has the authority to waive the exhaustion requirement. While it is the courts of a state that are faced with the burden of extra (or at least more comprehensive) applications for discretionary review, and it is for the benefit of the state courts that the principle of comity usually applies, it is the executive that litigates those cases on behalf of the people of the state, and it may be that the executive does not wish to forgo a round of litigation, especially if that litigation might further narrow the issues for habeas review.

Given that we hold that we are bound by *O'Sullivan,* and given the depth of analysis which would be necessary, we will not attempt to delineate the roles and authority of the Supreme Court of Pennsylvania[5] and the Office of the Attorney General,[6] as compared to, for example, the Governor or the Pennsylvania Legislature, to take an action such as waiving the exhaustion requirement. *But see Lavia v. Common-*

*wealth of Pennsylvania,* No. 99–3863, slip op. at 6 (3d Cir. Aug.8, 2000) (under Pennsylvania Constitution, Pa. Const. Art. 1, § 11, legislature has authority to decide what types of cases may be brought against the Commonwealth, and in what courts). In this context, we note only that it is perhaps better that § 2254 is clear in providing a manner for the states to waive exhaustion.

Given the foregoing and our expressed reticence concerning the propriety of the May 9, 2000, order by the Supreme Court of Pennsylvania, one might reasonably question why our holding is to the contrary. This question is answered, to some degree, in *Swoopes v. Sublett,* 196 F.3d 1008 (9th Cir.1999)(*per curiam* ), *cert. denied,* — U.S. —, 120 S.Ct. 1996, 146 L.Ed.2d 820 (2000). That case was remanded by the Supreme Court for further consideration in light of its decision in *O'Sullivan.* Succinctly stated, the Ninth Circuit, on remand, determined that Arizona made a clear statement in *Sandon* that discretionary review was not part of the "one complete round of the State's established appellate review process." *Swoopes* at 1010 (quoting *O'Sullivan* at 845, 119 S.Ct. 1728).[7] The Ninth Circuit's opinion also embodies the principle we have stated concerning deference to Supreme Court dicta. We think that the opinion in *Swoopes* captures the essence of our hesitancy to close the door left open by the Supreme Court dicta in *O'Sullivan,* and we conclude that the order of the Supreme Court of Pennsylvania removes a petition for allocatur from the one complete round of Pennsylvania's established appellate review process.

Based on the foregoing, we turn to the merits of Blasi's claim. We note, however,

---

5. Which, by way of example, includes the authority to exercise the powers of justices of the Court of King's Bench, Common Pleas, and Exchequer, at Westminster as of May 22, 1722. 42 Pa. Cons.Stat. Ann. § 502.

6. *See generally* Commonwealth Attorneys Act, 71 Pa. Stat. Ann. § 732–101 et seq.

7. Another way of expressing this concept is to say that the state courts have expressed a desire that their discretionary review procedure be thought of as an extraordinary writ rather than as part of the ordinary appellate review process.

that it is not clear that Blasi has demonstrated exhaustion of the claim as it is being presented to this court. As discussed above, Blasi failed to provide a factual basis for the claim of ineffective assistance on direct appeal to the Superior Court. In fact, the claim appears to have been simply that counsel failed to make objections, without even specifying the nature of the objections which should have been made. *Commonwealth v. Blasi*, No. 988 Philadelphia 1994, slip op. at 8 (Pa.Super.Ct. Apr. 28, 1995). *See also* Blasi's Petition for Allowance of Appeal before Supreme Court of Pennsylvania at 3 (stating question as whether trial counsel was ineffective "for failing to make or preserve appropriate objections"). For example, the claim of ineffective assistance for failing to make objections as it was presented to the PCRA court did not allege that the prosecutor knowingly used perjured testimony, though four other instances of questionable conduct were alleged. Blasi's Brief in Support of PCRA Petition at 7. No issue relating to alleged prosecutorial misconduct was presented to the Superior Court on appeal from the denial of PCRA relief. Brief of Appellant (on appeal of order denying PCRA petition) at 4.

We will presume for present purposes, however, that the general statement of the issue deemed insufficient for consideration by the Superior Court on direct review is sufficient for purposes of exhaustion. Presentation of the issue to the Superior Court would be sufficient exhaustion to permit this court to consider the claim for the reasons discussed above. We presume the issue exhausted, but need not decide the issue finally due to our authority under § 2254(b)(2). We turn first to the contention that counsel was ineffective for failing to object to prosecutorial misconduct in the form of knowing use of perjured testimony.

 In Pennsylvania, a person is guilty of perjury when he or she makes a false statement under oath in an official proceeding, the statement is material, and

the speaker does not believe it to be true. 18 Pa. Cons.Stat. Ann. § 4902(a). The element of subjective belief is especially difficult to prove, requiring circumstantial evidence to establish. *Commonwealth v. Atwood*, 411 Pa.Super. 137, 601 A.2d 277, 287 (1991), *allocatur denied*, 530 Pa. 638, 607 A.2d 249 (1992) (table). If a statement offered as evidence is vague, it will not support a finding of a subjective belief in its falsity. *See Atwood* at 287–288 (statement by donor that she did not mind if money was not repaid as long as donee "continued to do the Lord's work" reasonably relied on by donee in testifying that money was a gift and not a loan, but statements by others that money they provided was a loan and not a gift were not vague and supported conviction of recipient of funds who swore that money was a gift). When the allegedly false statement is contradicted by clear evidence to the contrary of which the speaker was aware, that evidence will be sufficient to establish subjective belief in the falsity of the statement. *See Commonwealth v. Marchand*, 452 Pa.Super. 625, 682 A.2d 841, 842–843 (1996) (evidence that defendant directed that jackets be given to others sufficient to support conviction for perjury relating to false statement in affidavit that jackets were stolen), *allocatur denied*, 547 Pa. 752, 692 A.2d 564 (1997)(table).

The testimony to which Blasi refers was that of Joanne Kester Blasi. On direct examination, she testified that she noticed changes in Michael's behavior in the spring of 1992. N.T. 1/12/94 at 104. She went on to explain that these changes included becoming defiant about "checking in" at home, especially with Blasi. *Id.* at 104–105. Also, Michael's grades started to drop, he failed gym class because he would not bring his gym clothes to school, *id.* at 105, he would go to David's bed (or vice versa) at night, *id.* at 105–106, and he would have bowel movements in the bathtub. *Id.* at 106.

On cross examination, Joanne denied any "behavioral problems" with Michael

before Blasi moved in with her. *Id.* at 108. She denied having Michael examined at Scranton Counseling Center for behavioral problems in kindergarten, *id.*, later explaining that Michael was only three in 1982 and therefore not even *in* kindergarten in 1982. *Id.* at 110–111. She admitted sending Michael to an evening program at the Friendship House, but denied that this was due to behavioral problems. *Id.* at 108. Rather, she saw that the program offered structure when David was involved, so she sent Michael. *Id.* at 109. Any evaluation of Michael at Scranton Counseling Center prior to 1986 was due to a hearing problem and delays resulting from a premature birth. *Id.*

Presumably in an attempt to show that this testimony was untrue, defense counsel asked if any records showing that Joanne was taking Michael to Scranton Counseling Center in 1982 for impulsive and aggressive behavior, a short attention span, and poor academic performance would be false. Joanne answered that such records would be false because Michael was not in school in 1982. *Id.* at 110–111. Joanne next denied sending Michael to the Friendship House summer diagnostic program for defiant and fire starting behaviors, *id.* at 111–112, or to the Friendship House in 1990 for an evaluation because of behavior problems. *Id.* at 112.

At that point in the cross examination, the prosecutor objected to the reference by defense counsel to documents not in the record, and a discussion was held at sidebar. It turned out that defense counsel had subpoenaed records from Friendship House and Scranton Counseling Center which, under Pennsylvania law, were the subject of a privilege. The trial court therefore excluded the records and barred questioning thereon. *Id.* at 112–116. Defense counsel did, however, ask one more question about "behavioral problems" prior to 1992, which Joanne denied. *Id.* at 116.

According to Blasi, at some point during this cross examination, the prosecutor must have become aware that Joanne was

perjuring herself but did nothing to stop it. Instead, the prosecutor objected to the cross examination and asserted the privilege, thereby preventing impeachment of the perjurious testimony.

We do not see how the testimony to which Blasi refers may be considered perjury because the evidence is not clear that Joanne subjectively knew that her statements were untrue. Nothing in this recitation shows that Joanne knew what was in the records, or that she even knew that the records existed. The statements in the records were not hers, as far as can be ascertained from this record, but those of psychologists. At most, the testimony may be said to reflect a mother who did not recognize behavioral problems as such, attributing behavioral difficulties instead to a premature birth, hearing difficulty, and a potential learning disability. None of this constitutes the clear evidence of subjective knowledge of, or belief in, the falsity of a statement necessary to sustain a conviction for perjury under Pennsylvania law.

Of course, if the testimony cannot be viewed as clearly perjured, the prosecutor cannot be said to have knowingly used perjured testimony based on this evidence, and defense counsel would have no reason to object to alleged prosecutorial misconduct for the use of perjured testimony. Moreover, due to the privilege, there would be no way for counsel (either defense counsel in the proceedings in which the perjury occurred or the Commonwealth in a later prosecution) to prove any alleged perjury. Counsel cannot be ineffective for failing to raise a futile objection. *United States v. Merlino*, 2 F.Supp.2d 647, 668 (E.D.Pa.1997). Blasi's claim in this respect therefore fails for the simple reason that the challenged testimony would not support a charge of perjury by Joanne Blasi.

Blasi next contends that the prosecutor improperly coached witnesses, but points to only two specific instances of

such purported conduct. The supposed coaching actually constituted a review of Michael's testimony, N.T. 1/12/94 at 51, and included a statement by Michael that he was to provide correct answers. *Id.* The second instance is an interview of Michael in the District Attorney's Office. *Id.* at 75–76. In neither instance did Michael say that he was told what to say. In fact, he later testified that no one ever told him what to say and that he was told only to tell his story and to tell the truth. *Id.* at 78–79. We find no improper coaching of witnesses.

■ Blasi contends that references by the prosecutor to the unimpeached testimony of Michael and Joanne constitutes misconduct. Since the testimony was admitted, there can be no misconduct in referring to it. Moreover, the Superior Court affirmed the trial court's ruling with respect to admission of the psychological records and cross examination thereon. *Commonwealth v. Blasi*, No. 988 Philadelphia 1994, slip op. at 5 (Pa.Super.Ct. Apr. 28, 1995). Objection to the prosecutor's references to the testimony would have been futile, and counsel was not ineffective for failing to object.

■ Blasi next argues that the prosecutor committed misconduct by making loud remarks at sidebar. The first related to the applicability of a hearsay exception when a counselor testified that Michael had said he was afraid of AIDS after he and Blasi engage in anal intercourse. The prosecutor, at the time of the loud voice, was indicating that the "tender years exception" under 42 Pa. Cons.Stat. Ann. § 5985.1 was inapplicable. Rather, the statement was admissible under an exception to the hearsay rule for statements made to a medical provider. The trial court agreed with the prosecutor and overruled the objection. N.T. 1/13/94 at 17–21. We fail to see any prejudice, much less unfair prejudice, to a defendant in a jury possibly overhearing part of a discussion regarding hearsay exceptions.

■ The only other instance of the prosecutor's using a loud voice to which Blasi refers is a proffer at sidebar concerning the testimony of Reverend Vernon Searfoss concerning counseling sessions with Joanne and Blasi. *Id.* at 37. This proffer was consistent with the testimony which was presented, and we see no prejudice to Blasi even if the jury overheard the prosecutor's remarks.

■ The last argument raised by Blasi in this respect is that the prosecutor asked a number of leading questions or asked questions after objections were sustained, demonstrating a lack of regard for the rules of court which amounted to unfair manipulation of the proceedings. We first note that Pennsylvania permits "direct, succinct, and even leading questions" when the witness is a child because children are easily intimidated by a courtroom. *Commonwealth v. Polston*, 420 Pa.Super. 233, 616 A.2d 669, 678 (1992), *allocatur denied*, 534 Pa. 638, 626 A.2d 1157 (1993) (table). Moreover, when the testimony was of substantial importance, as opposed to background or transition questions, defense counsel in fact did object. *See, e.g.,* N.T. 1/12/94 at 42 (objection to question about oral sex when prosecutor "put words in the witness' mouth"); at 49 (objection to question containing description of Michael's feelings about testifying). Regardless, we have read the entirety of the transcripts and find no "unfair manipulation of the proceedings" by the prosecutor.

In short, we have examined each of the allegations of alleged prosecutorial misconduct and find no such misconduct. Defense counsel cannot have been ineffective for failing to object to a non-occurring event, and Blasi's second claim fails.

## VII. APPROPRIATE OBJECTIONS

Blasi contends that counsel was ineffective for failing to make and preserve appropriate objections. The Superior Court was referring specifically to this claim with its description of "too general and, there-

fore, inadequate." *Commonwealth v. Blasi*, No. 988 Philadelphia 1994, slip op. at 8 (Pa.Super.Ct. Apr. 28, 1995).

 There are instances in which denial of the right to the effective assistance of counsel is of such magnitude that prejudice arising therefrom is presumed. *United States v. Cronic*, 466 U.S. 648, 658–659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Such circumstances would include the complete denial of counsel during a critical stage of a criminal trial or the denial of the right of effective cross examination. *Id.* at 659, 104 S.Ct. 2039. "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 n. 26, 104 S.Ct. 2039 (citing, *inter alia, Strickland* at 693–696, 104 S.Ct. 2052). A court reviewing a claim of ineffective assistance looks to the actual performance of counsel at trial to determine whether there are specific errors to support the claim. *Flamer v. Delaware*, 68 F.3d 710, 729 (3d Cir.1995), *cert. denied*, 516 U.S. 1088, 116 S.Ct. 807, 133 L.Ed.2d 754 (1996).

In this case, it cannot be said that counsel was not provided nor that cross examination was not permitted, and there are no other circumstances of such constitutional magnitude as to give rise to a presumption of prejudice from a denial of the assistance of counsel. We therefore look for specific errors of counsel to determine whether there was ineffective assistance which undermined the reliability of the guilty verdict.

 The only specific instance to which Blasi points as a failure to raise an objection is opinion testimony by Joanne. N.T. 1/12/94 at 97. Actually, counsel had objected to opinion testimony during a sidebar conference after the prosecutor put a proffer on the record. *Id.* at 91–93. Moreover, there does not appear to be what normally is denominated opinion testimony by Joanne during the testimony cited by Blasi. Rather, the testimony relates to the reasons for Blasi leaving the marital residence in July, 1992. Joanne went to a counselor for behavioral problems with David (the older son), told him that she was considering "going residential," *id.* at 97, and asked if CYS would be of help. The counselor agreed and an appointment was made. Later, Joanne took David to CYS and a file was opened, with further investigation to follow. On learning that Joanne had gone to CYS and that there was to be an investigation, Blasi became angry and upset, and left the house. *Id.* at 97–98. All of this is simply a factual recitation of the circumstances surrounding Blasi's departure.

In contrast, during testimony by Joanne relating to changes in Michael's behavior, counsel renewed the objection made at sidebar to opinion evidence. *Id.* at 104.

In other words, when there was testimony which could be characterized as improper opinion testimony, counsel objected; there was no objection when the testimony was not an opinion. We find no error by counsel in this respect.

 While we do not believe it necessary due to the general nature of the argument, we note that we disagree with Blasi's characterization of trial counsel's performance when he says, "Throughout the course of the proceedings, however, trial counsel made virtually no objections and consistently failed to set forth sufficient grounds for objections in order to preserve issues for appellate review." Blasi's Brief in Support of Amended Habeas Corpus Petition at 10. Any trial attorney knows that raising every minor objection risks irritating a jury and appearing obstructionist or argumentative. Objections therefore are reserved for questions of importance as to which there is a meritorious objection. Trial counsel not only did this, but consistently raised objections of merit at sidebar if possible, thereby avoiding argument before the jury.

We find no ineffective assistance by counsel for failing to raise objections or preserve issues for appellate review.

## VIII. POST TRIAL MOTIONS

■ Blasi argues that trial counsel was ineffective for failing to file post trial motions. He contends that a post trial motion was necessary to preserve the issue of prosecutorial misconduct for appellate review.

We already have noted that the claim of prosecutorial misconduct lacks a factual basis. In addition, as the Superior Court noted in its opinion on direct appeal, post trial motions have been replaced in Pennsylvania with post-sentence motions. *See* Pa. R.Crim. P. 1410.B. Since such motions are optional, Blasi cannot have been prejudiced by any failure to file a motion. *Commonwealth v. Blasi*, No. 988 Philadelphia 1994, slip op. at 6 (Pa.Super.Ct. Apr. 28, 1995).

## IX. PRETRIAL PREPARATION AND INVESTIGATION

Blasi's claim that trial counsel failed to conduct adequate pretrial preparation and investigation relates to the testimony of William Grochowski, Bob Okrak, Charles LeStrange, and Kathy Stankiewicz. *Commonwealth v. Blasi*, No. 1512 Philadelphia 1997, slip op. at 4 (Pa.Super.Ct. Jan. 30, 1998). Blasi argued before the PCRA court and the Superior Court on appeal from the denial of relief under the PCRA that the testimony of these witnesses, as well as records in their possession, would have: (1) established an alibi defense; (2) demonstrated that Blasi was physically incapable of committing the crime; and (3) impeached the primary prosecution witnesses.

■ As noted in the previous section of this memorandum, a claim of ineffective assistance of counsel generally applies to actual errors by counsel during trial. However, the *Strickland* test also applies to a claim of ineffective assistance for fail-ure to conduct a pretrial investigation, including interviews of potential witnesses, and to call witnesses at trial. *See generally Coss v. Lackawanna County D.A.*, 204 F.3d 453, 462 (3d Cir.2000). The performance of counsel still must be objectively unreasonable, and not a matter of "justifiable or strategic decisions," *id.* at 462 n. 9, and prejudice is demonstrated by showing that a reasonable probability exists that, if counsel had subpoenaed the witnesses, the defendant would not have been found guilty. *Id.* at 462.

■ Logically, counsel cannot be ineffective for failing to call a witness whose identity was unknown and could not have been known, or who was unavailable at the time of trial. Also, the defense cannot have been prejudiced unless the potential witness had favorable evidence to provide. The Supreme Court of Pennsylvania therefore has summarized the elements of such a claim as follows:

> To prove that counsel was ineffective for failing to call a witness, Appellant must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied Appellant a fair trial.

*Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1048 (1999).

■ The magistrate judge first echoed the holding of the PCRA court and Superior Court with respect to these witnesses and their relation to an alibi defense. That is, both the Superior Court and the PCRA court found that "an alibi defense would have been ineffectual in this matter because the dates of the abuse are unknown." *Commonwealth v. Blasi*, No. 1512 Philadelphia 1997, slip op. at 6 (Pa.Super.Ct. Jan. 30, 1998) (quoting PCRA court opinion). Blasi does not object to the report and recommendation in this regard, and we agree with the magis-

trate judge and the state courts in any event.

■ Instead, Blasi objects to the failure of the magistrate judge to address the other reasons for which this evidence should have been presented, according to Blasi. The first is his physical inability to perform the conduct about which Michael testified. The Superior Court quoted at length from the opinion of the PCRA court opinion on this issue, concluding that the jury was aware from the testimony of Blasi and Michael concerning the injury. *Id.* at 7 (quoting PCRA court opinion at 9–10). In fact, Michael testified that Blasi sometimes wore a sling. *Id.* We also note that Joanne testified concerning Blasi's injuries. N.T. 1/12/94 at 95–96, 120.

Because the jury already had this information, the state courts found that any further medical testimony would have been unnecessarily repetitious. This conclusion is neither contrary to any decision of the Supreme Court of the United States, nor an unreasonable application of any decision of the Supreme Court. We must agree that counsel was not ineffective for failing to call any witness for the purpose of providing further evidence of Blasi's physical condition.

In his brief, Blasi states:

> Furthermore, Blasi argued that there was evidence of extensive physical abuse of Michael Kester and his brother by their mother, and that Michael Kester had an extensive criminal record and a history of aggressive, manipulative, and vindictive behavior. Pretrial and trial counsel never made any efforts whatsoever to investigate these issues. The Superior Court failed to even mention them in their January 30, 1998, Memorandum.

Blasi's Memorandum of Law in Support of Objections to Report and Recommendation at 12.

■ The problem with this aspect of Blasi's claim is that he made no such argument before the Superior Court. The evidence which Blasi contends should have been the subject of pretrial investigation is recited by his counsel in a brief supporting his appeal from the denial of PCRA relief. Brief of Appellant at 11–15. The matters discussed include Blasi's medical records, showing the dates of visits and physical therapy, his health care providers and medications, and details of his condition with respect to the range of motion in his left shoulder. *Id.* at 12. Also, witnesses testified concerning Blasi's work records, *id.* at 13, Joanne's work records, *id.* at 13–14, Blasi's physical therapy sessions, *id.* at 14, purported threats by Joanne Blasi, *id.* at 14–15, Blasi's physical condition as viewed by lay witnesses, *id.* at 15, the availability of the above-described records, *id.*, and Blasi's general daily routine. *Id.* Blasi's argument concerning the failure to investigate or call witnesses, *id.* at 18–23, relates to using these witnesses and records to corroborate his own testimony and to impeach Joanne and Michael, in addition to the alibi argument. There is no discussion of any physical abuse by Joanne, nor any mention of Michael's criminal history [8] and record of aggressive, manipulative, and vindictive behavior. Given the lack of record evidence to support this contention as well as the fact that it was not raised before the state courts in the form now argued (*see* discussion above concerning failure to exhaust and procedural default), Blasi is not entitled to habeas relief based on this purported evidence.

Finally, Blasi argues that Francis Kester, Joanne's ex-husband, would have testified that Joanne, Michael, and David had threatened to bring similar charges

---

**8.** One wonders what sort of "extensive criminal record" a 12- or 13-year-old boy would have. Also, records generally are not available for offenses committed by children in Pennsylvania, *see* 42 Pa. Cons.Stat. Ann. §§ 6307, 6308, so that the source of this information must be questioned.

against him in the past and that Joanne actually had taken steps to do so. The only reference to such a threat mentioned in the brief before the Superior Court is in the summary of the testimony of Rachael Mahnke in Blasi's trial with respect to charges of sexual conduct with David. Mahnke testified on cross examination that she informed Blasi's defense counsel in this case that Joanne had made a threat. Brief of Appellant at 14–15. No prospect of testimony by Francis Kester was argued before the state courts, and the testimony of Mahnke was not considered by the PCRA court because (1) Mahnke did not appear for the evidentiary hearing and (2) the testimony from the separate trial was not admissible or subject to judicial notice in the PCRA proceedings. *Commonwealth v. Blasi,* No. 93 CR 96, slip op. at 3–5 (C.P. Lackawanna Cty. Mar. 20, 1997).

The claim as it relates to testimony by Francis Kester, then, is procedurally barred, and the claim as it relates to the testimony of Mahnke is unsupported by a factual basis. Blasi is not entitled to habeas relief on this final aspect of the claim.

## X. JURY SELECTION PROCESS

■■ Blasi's last claim is that pre-trial and trial counsel were ineffective for failing to object to the jury selection process in effect in Lackawanna County. Blasi argues that the process resulted in a jury which did not represent a fair cross-section of the community. *See generally Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

The Superior Court held that this claim lacked merit because the jury selection process in Lackawanna County had been found constitutional in *Commonwealth v. Cameron,* 445 Pa.Super. 165, 664 A.2d 1364 (1995), *allocatur denied,* 544 Pa. 622, 675 A.2d 1242 (1996) (table), a decision which a later panel of the Superior Court could not overturn. *Commonwealth v. Taylor,* 437 Pa.Super. 102, 649 A.2d 453, 455 (1994). Under *Commonwealth v. Par-*

*ker,* 503 Pa. 336, 469 A.2d 582, 584 (1983), because the underlying claim was without merit, counsel could not have been ineffective for failing to pursue the claim. *Commonwealth v. Blasi,* No. 1512 Philadelphia 1997, slip op. at 9 (Pa.Super.Ct. Jan. 30, 1998).

In *Cameron,* the defendant argued that Lackawanna County's use of driver's licenses excluded African–American, elderly, poor, and/or handicapped individuals. The Superior Court began by reciting the elements of a fair-cross-section claim: "1) the group allegedly excluded is a distinctive group in the community; 2) representation of this group in the pool from which juries are selected is unfair and unreasonable in relation to the number of such persons in the community; and 3) the under-representation is due to systematic exclusion of the group in the jury selection process." *Cameron* at 1369 (citing *Duren* ). The Superior Court then pointed out that the defendant failed to meet even the first element, since the group of persons who did not have driver's licenses was not distinctive, but would include people of all races, genders, and socio-economic classes, as well as both handicapped and non-handicapped individuals. *Id.* (citing *United States v. Grisham,* 841 F.Supp. 1138 (N.D.Ala.1994), *aff'd,* 63 F.3d 1074 (11th Cir.1995), *cert. denied,* 516 U.S. 1084, 116 S.Ct. 798, 133 L.Ed.2d 746 (1996)).

The Superior Court added that the defendant's equal protection argument failed as well because he did not show that he was a member of the class against whom discrimination was being directed and because he did not show *purposeful* discrimination. *Id. See also Duren* at 368 n. 26, 99 S.Ct. 664 (discussing differences between Sixth Amendment and Fourteenth Amendment analyses; *Ramseur v. Beyer,* 983 F.2d 1215, 1225–1226, 1234–1235 (3d Cir. 1992) (contrasting analysis under Sixth Amendment of *unfair* jury selection process with analysis under Fourteenth Amendment of *purposefully discriminatory* jury selection process), *cert. denied,* 508

U.S. 947, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993). The Superior Court added, "in the interest of logic and practicality," that the use of the licensed driver list actually expanded the number of names available in the Lackawanna County jury pool. *Cameron* at 1369–1370.

Since *Cameron*, the Supreme Court of Pennsylvania has found a jury selection process involving the use of a list of registered drivers to be constitutional. *Commonwealth v. Lopez*, 559 Pa. 131, 739 A.2d 485, 495 (1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 2203, 147 L.Ed.2d 237 (2000). It should be emphasized that, in pursuing a claim of ineffective assistance for failure to object to the jury selection process, the claimant also must demonstrate that there is evidence which would support such a claim. *Id.* at 495 n. 15.

Blasi states, "In this case, a timely motion and an evidentiary hearing establishing the *Duren* factors would have proven a violation of the fair cross-section requirement of the 6th Amendment." Blasi's Memorandum of Law in Support of Objections to Report and Recommendation at 16.

There is ample reason to conclude that trial counsel acted reasonably in determining that there was no basis for a motion challenging the jury selection process. Blasi points to no authority stating that the use of driver's license lists is *per se,* or even generally, an unconstitutionally exclusionary practice. While representatives of the Lackawanna County Court Administrator's Office apparently testified in *Commonwealth v. Young,* No. 397 of 1992 (C.P. Lackawanna Cty.), that the number of individuals selected for the jury pool actually decreased, Blasi's Memorandum of Law in Support of Objections to Report and Recommendation at 16–17, that testimony obviously did not lead to a change in the jury selection process (leading us to conclude that the trial court in *Young* did not find a constitutional violation despite this testimony), and the issue was not appealed.

*Commonwealth v. Young,* 561 Pa. 34, 748 A.2d 166 (1999).

Even at this stage, Blasi points to nothing which indicates that any distinct group is systematically excluded from participating on juries in Lackawanna County due to the use of driver's license lists.

■■ Finally, Blasi contends that conditioning an individual's right to serve on a jury by the privilege of a driver's license violates *Duren.* We note first that this argument was not presented to the state courts, the claim being limited to the fair-cross-section argument discussed above. Also, the principle on which Blasi relies is not recited in *Duren,* despite his citation thereto. Regardless, absent a showing that distinct groups have been hindered in attempts to obtain driver's licenses, neither the Sixth Amendment nor the Fourteenth Amendment is violated by Lackawanna County's use of a list of licensed drivers. *Cf. United States v. Miller,* 116 F.3d 641, 659 (2d Cir.1997) (absent showing that minority group was hindered in attempts to register to vote, use of voter registration list to draw jury venire constitutional), *cert. denied,* 524 U.S. 905, 118 S.Ct. 2063, 141 L.Ed.2d 140 (1998), *abrogated in non-material part by Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). Since the use of a driver's license list to draw the jury venire does not violate the Constitution, counsel cannot have been ineffective for failing to so argue.

## XI. FACTUAL DETERMINATIONS

■■ Blasi raises objections concerning the magistrate judge's purported failure to consider the "second prong" of the analysis under § 2254(d), i.e. that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Sec. 2254(d)(2). However, in expanding on these objections, his dispute is not with the factual findings but with the legal conclusions drawn therefrom, so that the analysis

**478**

properly belongs under the first prong embodied in § 2254(d)(1). We find no unreasonable factual finding by the state courts based on the evidence presented.

## XII. CONCLUSION

While not all of Blasi's claims were fairly presented to the Supreme Court of Pennsylvania, all of his claims have been exhausted because all have been either (1) fairly presented to the Pennsylvania Superior Court and such presentation is sufficient for exhaustion in the courts of Pennsylvania or (2) procedurally defaulted. Having considered all of Blasi's claims pursuant to our authority under 28 U.S.C. § 2254(b)(2), his petition for a writ of habeas corpus will be denied.

We find no substantial showing of the denial of a constitutional right, and therefore decline to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2) and Fed. R.App. P. 22(b). *See generally United States v. Williams,* 158 F.3d 736, 742 and n. 4 (3d Cir.1998).

An order consistent with this memorandum will issue.

## ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. The report and recommendation (record document no. 31) of the magistrate judge is not adopted as the holding of the court, and this order and accompanying memorandum shall constitute the holding of the court.

2. Blasi's objections (record document no. 38) are sustained to the extent that the report and recommendation are inconsistent with this order and accompanying memorandum, and are otherwise overruled.

3. Blasi's amended petition (record document no. 14) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

4. The court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2); Fed. R.App. P. 22(b).

5. The clerk is directed to close the file.